467 So.2d 1388 (1985)
Kenneth SANDERS, Plaintiff-Appellant,
v.
Lilton CHESSON, Jr., Walt Carrico and Cameron Offshore Services, Inc., Individually and d/b/a Industrial Marine Services; and, Industrial Marine Services, Defendants-Appellees.
No. 84-325.
Court of Appeal of Louisiana, Third Circuit.
April 10, 1985.
Rehearing Denied May 14, 1985.
*1389 Jones, Jones & Alexander, J.B. Jones, Jr., Cameron, for plaintiff-appellant.
Allen, Gooch & Bourgeois, Randall K. Theunissen, Lafayette, for defendants-appellees.
Before GUIDRY, LABORDE and YELVERTON, JJ.
GUIDRY, Judge.
Plaintiff, Kenneth Sanders, filed this worker's compensation suit against his employer, Cameron Offshore Services, Inc, d/b/a Industrial Marine Services (IMS), defendant, alleging that on December 31, 1979, he was injured while in the course and scope of his employment.[1] Plaintiff also sought penalties and attorney's fees. Defendant answered plaintiff's suit generally denying the allegations set forth therein. The trial court dismissed plaintiff's suit finding that plaintiff failed to show that his injury was one arising out of his employment with defendant. Plaintiff appeals the trial court's judgment. We affirm.
In November 1979, plaintiff secured employment with IMS in Cameron, Louisiana, as a welder. IMS was in the business of furnishing welders to the oil industry in the Cameron area. Welders employed by IMS were required to work both onshore and offshore.
At trial, plaintiff testified that he was hired by G.W. Bird, IMS' shop foreman. According to plaintiff, Bird, better known as "Red", indicated to him at the outset that he was on 24 hour call and failure to respond to a call would result in termination of his employment.
Bird was not called as a witness by plaintiff or defendant. However, other executives of IMS testified that only salaried employees were on 24 hour call. Their testimony indicated that welders worked on an hourly basis with no guarantee as to the amount of work they would have in a given week. Additionally, the executives added that a "call out" list was kept in order to locate welders at times other than normal work hours. The "call out" list included the phone number where the welders could be reached. If a welder was needed and was unable to be located, he would not be fired, but his name would be placed at the bottom of the "call out" list.
There was also some contradiction in the evidence concerning the particular job plaintiff was doing on the day of the accident. Regardless, it was established that plaintiff departed from the IMS shop in the early afternoon of December 31, 1979, along with a co-worker, referred to as Rusty, in order to pick up plaintiff's personal vehicle which was being repaired at an automotive shop in Lake Charles. Plaintiff had completed his last assigned task for IMS at the time he left the shop that afternoon. Upon arriving at the automotive place in Lake Charles, plaintiff learned that his vehicle had been repaired, but he chose to leave the vehicle there because he felt he had been overcharged.
On their way back to Cameron, Rusty dropped plaintiff off at Wayne Philmon's home, another co-worker. Plaintiff wanted to store some personal effects he had taken out of his vehicle at Philmon's residence. After visiting with Philmon for a couple of hours, plaintiff decided to take a nap. Since Philmon had earlier indicated to plaintiff that he would take plaintiff back to the IMS bunkhouse, he decided to nap in the back seat of Philmon's vehicle. The next thing plaintiff remembers is waking up in the hospital. Philmon was involved *1390 in a vehicular collision as he drove to Cameron resulting in plaintiff's injuries.
At the time of the accident, plaintiff was residing in the IMS bunkhouse which was located next to the IMS yard. Plaintiff was charged a minimal fee for lodging and meals. Although welders were not required to live in the bunkhouse, plaintiff chose to do so because of its convenience.
Plaintiff contends that the injuries sustained by him in the vehicle accident, while a passenger in Philmon's vehicle, occurred during the course and scope of his employment with IMS and he is therefore entitled to worker's compensation benefits and medical expenses. The trial court concluded otherwise. On appeal, plaintiff urges that the trial court erred.
In order to be entitled to worker's compensation benefits, an employee must show that the injuries received were due to an accident "arising out of" and "in the course of" his employment. La.R.S. 23:1031; King v. Wilson Bros. Drilling Co., Inc., 441 So.2d 68 (La.App. 3rd Cir. 1983), writ denied, 443 So.2d 598 (La.1983). The terms "arising out of" and "in the course of" are not synonymous, but must be considered together. Lisonbee v. Chicago Mill & Lumber Co., 278 So.2d 5 (La. 1973).
Our courts have had little difficulty in formulating a test for determining whether an employee was within the course of employment when injured. An accident occurs in the course of employment when it happens during the time of employment and at a place contemplated by the employment. Guidry v. Sline Industrial Painters, Inc., 418 So.2d 626 (La.1982).
However, the test to decide whether an accident arose out of the employment has occasioned our courts some difficulty. In Myers v. Louisiana Ry. and Navigation Co., 140 La. 937, 74 So. 256 (1917), the Louisiana Supreme Court observed that in order to meet the requirement of "arising out of", "[i]t ought to be sufficient that the nature of the employment was such that the risk from which the injury resulted was greater for the workman than for a person not engaged in the employment....". Later in Kern v. Southport Mill, 174 La. 432, 141 So. 19 (1932), our Supreme Court set forth a different test to be employed in determining whether the accident arose out of the employment. In Kern, the court stated:
"In determining ... whether an accident `arose out of' the employment, it is necessary to consider only this: (1) Was the employee then engaged about his employer's business and not merely pursuing his own business or pleasure; and (2) did the necessities of that employer's business reasonably require that the employee be at the place of the accident at the time the accident occurred?"
It has been suggested that where an employee's actions fall squarely within the course of his employment, any risk that he may encounter will be considered as arising out of the employment. However, in situations where there is doubt concerning whether the employee is within the course of his employment, compensation will be allowed only when the employment has exposed the claimant to a greater risk than that to which the general population might have been exposed. W. Malone and A. Johnson, "Workers' Compensation Law and Practice", 13 Louisiana Civil Law Treatise (2d ed. 1980), § 193 at pages 392-393; see also, Whitney v. U.S. Fid. & Guar. Ins. Co., 373 So.2d 728 (La.App. 2nd Cir.1979), writ denied, 376 So.2d 320 (La.1979).
In the instant case, the trial court determined that it was, at best, arguable whether plaintiff was in the course of his employment at the time of the accident. However, the trial court assumed arguendo that plaintiff was in the course of his employment and ultimately concluded that plaintiff's accident did not arise out of his employment.
In its written reasons for judgment, the trial court made the following remarks regarding the evidence presented at trial on this issue:
"Kenneth Sanders was admittably (sic) on a personal mission when he went to *1391 Lake Charles that afternoon (Tr. 64). He was not required to stop at Wayne Philmon's house by the conditions of his employment, nor was he required to return to the I.M.S. bunkhouse. The trip he was on when injured can not be classified as one that `is reasonably contemplated by the contract of employment as being one which the employee would make in the interest of his employer's business.' Batte [Boutee] v. Mudd Separators, Inc., 236 So.2d 906, 908 (La.App. 3d Cir. 1970), cert. den. 256 La. 894, 240 So.2d 231 (1970). The plaintiff did not show that his injury was one arising out of his employment. For that reason, he may not recover under the Louisiana Workmen's Compensation Law."
Before addressing the "arising out of" issue, we, like the trial court, have serious doubt that plaintiff was in the course of his employment at the time of the accident. Plaintiff made no showing that he was returning to the IMS bunkhouse in order to receive an assignment. In fact, there is evidence in the record which indicates that an assignment for plaintiff would not be forthcoming until January 2nd. Furthermore, Wayne Philmon did not testify at trial, consequently, it is merely a matter of speculation to conclude that plaintiff was being driven back to the IMS bunkhouse at the time of the accident.
In any event, we conclude that the trial court did not err in determining that plaintiff failed to establish that his injuries arose out of his employment. This conclusion is inevitable whether the evidence is considered in light of the rationale espoused in Myers v. Louisiana Ry. and Navigation Co., supra, or in light of the rationale announced in Kern v. Southport Mill, supra. In the instant case, plaintiff failed to establish by competent evidence that at the time of the accident he was engaged about his employer's business as opposed to his personal pursuits and that the necessities of his employer's business reasonably required him to be at the place of the accident at the time the accident occurred. Additionally, it clearly appears from the record that the risk of injury by use of a public highway was no greater for plaintiff, as an employee of IMS, that it was for a member of the general public.
Accordingly, for the above reasons, the judgment of the trial court is affirmed at plaintiff's cost.
AFFIRMED.
NOTES
[1] At trial, plaintiff voluntarily dismissed all named defendants except Cameron Offshore Services, Inc., d/b/a Industrial Marine Services.