509 So.2d 608 (1987)
Robert D. DUPRE, Plaintiff-Appellee,
v.
The LOUISIANA RETAILERS ASSOCIATION SELF-INSURERS FUND, Defendant-Appellant.
No. 85-854.
Court of Appeal of Louisiana, Third Circuit.
May 13, 1987.
Writ Denied September 21, 1987.
Allen, Gooch, etc., Sera H. Russell, III, Lafayette, for defendant-appellant.
John Saunder and John Larry Vidrine, Ville Platte, for plaintiff-appellee.
Before GUIDRY, LABORDE, KNOLL and KING, JJ., and PAVY, J. Pro Tem.[*]
KING, Judge.
The issues presented by this appeal are the correctness of the trial court's entry and amendment of a preliminary judgment and the trial court's award of worker's compensation benefits, penalties and attorney's fees to the claimant.
Robert D. Dupre (hereinafter referred to as plaintiff) filed suit on December 12, 1983 seeking worker's compensation benefits against The Louisiana Retailers Association *609 Self-Insurers Fund (hereinafter referred to as defendant), the worker's compensation insurance carrier for "The Outdoorsman," a retail sporting goods store, located in Lafayette, Louisiana. After defendant was cited and served and failed to timely answer the suit, plaintiff took a preliminary judgment, pursuant to LSA-R.S. 23:1316, on January 13, 1984. Thereafter, defendant answered the suit and moved to set the matter for trial. Defendant appealed to the Third Circuit, Louisiana Court of Appeal from the entry of the preliminary judgment and the appeal was dismissed since it was an interlocutory decree. Dupre v. The Louisiana Retailers Association Self-Insurer's Fund, (La.App. 3 Cir.1984) (Our Docket Number 84-221 rendered on April 13, 1984.) Plaintiff moved to amend the preliminary judgment to include unpaid medical expenses and this motion was heard and granted on October 3, 1984 and a judgment was signed on October 4, 1984. Defendant applied for supervisory writs to the Third Circuit, Louisiana Court of Appeal from the granting of this motion and this writ was denied. Dupre v. The Louisiana Retailers Association Self-Insurer's Fund, (La.App. 3 Cir. 1985) (Our Docket Number 84-1114 rendered on January 9, 1985). Defendant then applied to the Louisiana Supreme Court for supervisory writs from the denial of its writ application and the writs were denied. Dupre v. The Louisiana Retailers Association Self-Insurer's Fund, 462 So.2d 1241 (La.1985). After the completion of the trial on the merits, the trial court ruled that plaintiff was in the course and scope of his employment when he was injured; that plaintiff was totally and permanently disabled within the meaning of the Louisiana Worker's Compensation statute; and that defendant was arbitrary and capricious in failing to properly investigate the claim and in failing to pay worker's compensation. The trial court awarded plaintiff worker's compensation benefits in the amount of $204.00 per week for an indefinite time during his disability and also awarded plaintiff penalties and attorney's fees for defendant's arbitrary failure to pay worker's compensation benefits.
Defendant appeals alleging that:
(1) The trial court erred in issuing a preliminary judgment herein;
(2) The trial court erred in amending the preliminary judgment after answer had been filed and after defendant had moved for a trial date;
(3) The trial court erred in holding that plaintiff was in the course of his employment when attacked and injured by an unknown third-party assailant;
(4) The trial court erred in holding plaintiff's injuries arose out of plaintiff's employment;
(5) The trial court erred in holding that plaintiff was disabled; and
(6) The trial court erred in awarding penalties and attorney's fees.
For the reasons hereinafter set forth we affirm in part and reverse in part the trial court judgment and render judgment dismissing plaintiff's claim.

FACTS
Plaintiff was the owner/manager of a retail establishment located in the Acadiana Mall in Lafayette, Louisiana, called "The Outdoorsman." Plaintiff went to the location of "The Outdoorsman", in the Acadiana Mall in Lafayette, Louisiana, at the end of the workday at approximately 10:00 o'clock P.M. on December 14, 1982. It was customary for plaintiff to collect and account for all of the day's receipts, place them in the trunk of his car, and then return in his car late in the evening to his home in Point Blue, Louisiana. The next banking day, during ordinary banking hours, plaintiff would take the business receipts to a nearby bank and deposit them. On the evening of his alleged injury, plaintiff left "The Outdoorsman" with the business receipts, locked them in the trunk of his car, left the business, and stopped at a Lafayette restaurant for a quick meal before returning to his home in Point Blue. After finishing his meal, plaintiff was on his way home when he again stopped, this time at a bar on the highway. At the bar, plaintiff used the restroom and then had a *610 couple of drinks. Plaintiff testified that he generally discussed his business and its location with the bartender. As plaintiff was leaving the bar to get into his car, someone attacked him, beating him severely. Plaintiff testified that someone shouted "Hey, Outdoorsman" immediately before the attack. Plaintiff had no other knowledge of the attack because he was knocked unconscious by his attacker. The attack had nothing to do with the business receipts that plaintiff had in the trunk of his car and plaintiff stated that no one in the bar knew of the existence of the business receipts in the trunk of his car because he had not discussed it with anyone in the bar. Plaintiff stated that he had not been robbed, even after he had been beaten and knocked unconscious. Plaintiff received a serious injury to his jaw which required surgery. He subsequently developed a form of neurosis preventing him from working, according to the psychologist testifying at trial.

PRELIMINARY JUDGMENT
Defendant contends in its first assignment of error that the trial court should not have entered a preliminary judgment as its adjuster had obtained an oral extension of time from plaintiff's attorney within which to file an answer. Plaintiff's attorney testified he had no recollection of granting such an extension and such extension, if granted, was not confirmed in writing.
Defendant in effect contends that the preliminary judgment should not have been entered because of the action of the plaintiff's attorney in agreeing to grant an extension of time to the adverse party to file responsive pleadings. See e.g. Allstate Ins. Co. v. Toups, 486 So.2d 304 (La.App. 3 Cir.1986), writ den., 489 So.2d 917 (La. 1986). We do not find that the trial court was manifestly in error or clearly wrong in not finding such an agreement from the evidence.
A preliminary judgment may be obtained on the basis of the facts set forth in a verified petition without the necessity of proof. For its rendition no proof is required except as to the fact of delay. Bickford v. Lutz, 339 So.2d 1268 (La.App. 1 Cir.1976); Walden v. Collins, 262 So.2d 848 (La.App. 2 Cir.1972); Hill v. Southern Advance Bag & Paper Co., 151 So. 241 (La.App. 1 Cir.1933). There is no question of fact that an answer was not timely filed by defendant. Therefore, we find that the trial court properly entered a preliminary judgment in this matter.
Plaintiff filed a worker's compensation action against the defendant on December 12, 1983. The defendant did not timely file an answer within the delays allowed by law which enabled the plaintiff to obtain a preliminary judgment on January 13, 1984 in accordance with La.R.S. 23:1316. Subsequently, the defendant filed an answer and then moved to set the matter for trial on June 8, 1984.
The preliminary judgment entitled the plaintiff to the maximum amount of worker's compensation benefits allowed by law. Pursuant to the preliminary judgment, the plaintiff submitted numerous medical bills to the defendant for payment. The defendant refused to pay on the grounds that the medical expenses were not encompassed in the preliminary judgment. The plaintiff then filed a motion to compel payment of the medical bills incurred between December 12, 1983, the date of the filing of his suit, and June 8, 1984, the date the defendant moved to fix the suit for trial.
The trial court held a hearing on October 3, 1984 on plaintiff's motion to compel payment of medical bills and held in pertinent part as follows:
"[T]he preliminary judgment previously entered herein includes and entitles plaintiff to all worker's compensation benefits allowable under the law including medical benefits and plaintiff is entitled to the recovery of all medical bills paid by him on his behalf for the period of the preliminary judgment which is December 14, 1982 through January 13, 1984.[sic]"[1] (Emphasis added.) *611 The trial court then scheduled a hearing, which was held on November 12, 1984, to fix the amount of the medical bills. After that hearing, the trial court amended the preliminary judgment of January 13, 1984 to entitle the plaintiff to all the benefits under the worker's compensation law for the medical expenses incurred during the period of December 14, 1982 through June 8, 1984, the date the defendant had first moved to fix the matter for trial.
Defendant contends in its second assignment of error that the amending of the original preliminary judgment was improper. In its brief, the defendant cites Vizina v. Industrial Indem. Co., 374 So.2d 753 (La.App. 3 Cir.1979), writ den., 376 So.2d 964 (La.1979), in which the court stated that a preliminary judgment is a penalty for the failure to file an answer and for the attendant delays caused by that failure. The defendant also cites Dolloile v. Landry, 234 So.2d 492 (La.App. 4 Cir.1970), in which the court stated that the defendant could avoid this penalty by filing his answer at any time before the plaintiff moves for preliminary judgment.
Defendant does not contest the fact that it was late in filing its answer, nor does it contest its obligation to pay worker's compensation benefits in accordance with the preliminary judgment. Defendant does contest the penalty of paying medical expenses assessed against it in the amended preliminary judgment which occurred after its answer was filed. Defendant contends that the medical expenses were not alleged in plaintiff's petition and were not included in the original preliminary judgment. Therefore, defendant takes the position that, under Dolloile, supra, the filing of its answer before the amended preliminary judgment was rendered precluded the penalty of paying medical expenses assessed by that amended preliminary judgment.
The original preliminary judgment reads in pertinent part as follows:
"JUDGMENT IS HEREBY RENDERED in favor of ROBERT D. DUPREE awarding workmen's [sic] compensation in the maximum amount by law ..."
Also, the plaintiff did allege that medical expenses were incurred in paragraph 5 of his petition which states as follows:
"As a result of this injury, your petitioner has incurred substantial medical expenses and has been unable to perform substantial functions of any work he might be able to perform."
In the judgment on the motion to compel payment of medical bills, the trial court made it clear that the preliminary judgment did include medical expenses. The Judgment on the motion to compel payment of medical expenses, signed on October 4, 1984, reads in pertinent part as follows:
"After hearing the argument of counsel it is the ruling of this court and so ordered that the preliminary judgment previously entered herein includes and entitles plaintiff to all worker's compensation benefits allowable under the law including medical benefits and plaintiff is entitled to the recovery of all medical bills paid by him or on his behalf for the period ..." (Emphasis added.)
Medical expenses are a part of the worker's compensation benefits as La.R.S. 23:1203 places a duty upon the employer to furnish medical expenses.
Therefore, the trial court by amending the preliminary judgment was merely recasting the original judgment to specify more precisely what was meant. This is not like defendant contends, that the trial court imposed the penalty of La.R.S. 23:1316 for failing to file an answer after the defendant had in fact answered. We find that the trial court was not manifestly in error or clearly wrong in the amending of the preliminary judgment as this was merely a clarification of the original preliminary judgment.

ACCIDENT IN THE COURSE OF AND ARISING OUT OF EMPLOYMENT
In its third and fourth assignments of error, defendant alleges that the trial court *612 erred in holding that plaintiff was in the course and scope of employment when he was attacked and injured by an unknown assailant, and in holding that plaintiff's injuries arose out of his employment.
LSA-R.S. 23:1031 provides that an employer shall pay compensation to an employee who is injured by an accident "arising out of and in the course of his employment." The terms "arising out of" and "in the course of" are not synonymous. Lisonbee v. Chicago Mill and Lumber Company, 278 So.2d 5 (La.1973).
As we have stated:
"Our courts have had little difficulty in formulating a test for determining whether an employee was within the course of employment when injured. An accident occurs in the course of employment when it happens during the time of employment and at a place contemplated by the employment. Guidry v. Sline Industrial Painters, Inc., 418 So.2d 626 (La.1982).
However, the test to decide whether an accident arose out of the employment has occasioned our courts some difficulty. In Myers v. Louisiana Ry. and Navigation Co., 140 La. 937, 74 So. 256 (1917), the Louisiana Supreme Court observed that in order to meet the requirement of `arising out of', `[i]t ought to be sufficient that the nature of the employment was such that the risk from which the injury resulted was greater for the workman than for a person not engaged in the employment. ...'. Later in Kern v. Southport Mill, 174 La. 432, 141 So. 19 (1932), our Supreme Court set forth a different test to be employed in determining whether the accident arose out of the employment. In Kern, the court stated:
`In determining ... whether an accident "arose out of" the employment, it is necessary to consider only this: (1) Was the employee then engaged about his employer's business and not merely pursuing his own business or pleasure; and (2) did the necessities of that employer's business reasonably require that the employee be at the place of the accident at the time the accident occurred?'" Sanders v. Chesson, 467 So.2d 1388, at page 1390 (La.App. 3rd Cir.1985).
See also Verrette v. Town of Ponchatoula, 464 So.2d 392 (La.App. 1 Cir.1985). Cf. Palermo v. Reliance Ins. Co., 501 So.2d 333 (La.App. 3 Cir.1987), writ den., 503 So.2d 19 (La.1987).
In the case at hand, the trial court concluded, as stated in its reasons for judgment, that plaintiff was in the course and scope of his employment at the time of the accident and accordingly found that plaintiff was entitled to receive worker's compensation benefits. The trial court never actually stated that it found that plaintiff's injuries arose out of plaintiff's employment, although it can be assumed that it made such a finding. We do not agree with these findings of fact by the trial court as they are manifestly in error and clearly wrong. Plaintiff's claim that the assault occurred in the course of and that it arose out of his employment are unsupported by the evidence. Whether or not plaintiff was within the course and scope of his employment at the time he was injured is partially determinative of his claim. Plaintiff was returning home after having picked up his business's receipts. Plaintiff claims that he was still in the course of employment because upon arriving at his home he was to place his business's receipts in a safe and prepare a bank deposit slip. Plaintiff, in essence, is claiming that he is a 24-hour-a-day employee. Plaintiff also claims that his presence at the bar at the time of the assault was a place contemplated by his employment because he had a continuous duty to promote his business. His employment did not dictate that plaintiff stop at a bar on his way home in order to have a few drinks nor that he talk business while he was there. Though plaintiff may have been in the course of employment while returning to his home in order to take care of the business's daily receipts, his visit to the bar to consume drinks was of a purely personal nature and constituted a deviation from the course of his employment.
*613 In regard to whether or not the assault arose out of plaintiff's employment, we first analyze the instant situation under the two-part test provided in Kern v. Southport Mill, supra. Plaintiff claims he was engaged in his business and not merely pursuing his own pleasure, the first requirement of Kern, maintaining that he was engaged in his employer's business because he was returning from his business premises to his home where he would later place his business's receipts in a safe and prepare a bank deposit slip and make a bank deposit the next day. Plaintiff further contends that he did not cease performance of his duties when he stopped at a restaurant for dinner and then subsequently at a bar for the purpose of using the restroom and having a few drinks, because he "discussed" his business with some unknown person(s) in the restaurant and bar. We find that when plaintiff decided to have a few drinks at the bar on the highway, he abandoned whatever employment duties he might have been carrying out and was thereafter pursuing a purely personal pleasure.
Though plaintiff maintains that he was always engaged in his business because he made a point of promoting his business by "talking it up" wherever he might go, this Court does not find that just because a person merely talks about business at some place and point in time, that he is engaged in his employer's business for purposes of the worker's compensation laws.
Even harder for this Court to accept is plaintiff's contention that the necessity of the employer's business reasonably required that plaintiff be at the bar at the particular time that he was assaulted. This is the second requirement under the Kern rationale. Though plaintiff may have had a responsibility to promote his business, the exercise of common sense indicates that plaintiff was not required by the necessities of promoting the business to make such an unplanned and unscheduled "business" call at such an establishment as a highway bar at such a late hour of the night.
Under the rationale of Myers v. Louisiana Ry. and Nav. Co., supra, and Verrette v. Town of Ponchatoula, supra, the assault made upon plaintiff by unknown assailant(s) for some unexplained reason was clearly unrelated to plaintiff's responsibilities of employment (or at least there is nothing in the record to indicate that it was). The only evidence to support plaintiff's contention was his own testimony that just prior to the attack someone called out "Hey, Outdoorsman." However, this alone would not be sufficient to meet the test set forth in Myers and Verrette. Plaintiff himself testified that he had locked the receipts of his business in his trunk of the car prior to stopping at the restaurant and bar, and that he did not discuss that fact with anyone. Additionally, there was no evidence of any attempt on the part of plaintiff's assailants to steal the business receipts, or for that matter, to rob plaintiff himself.
It certainly cannot be said that the risk of injury was greater for plaintiff while at the bar, because of his employment, than it would be for any other person. The risk of being attacked outside of a bar would appear to be the same for any person. The fact that plaintiff worked for the "The Outdoorsman" did not increase the ordinary risk of assault.
In any event, we must conclude that the trial court erred in finding that plaintiff was in the course of his employment at the time of the assault and that the assault arose out of the employment. The record, when considered in light of Kern, reflects that plaintiff failed to establish by competent evidence that at the time of the accident he was engaged in his business as opposed to his personal pursuits and that the necessities of business reasonably required him to be at the place of the accident at the time the accident occurred. The record, when considered in light of Myers and Verrette, does not establish that the accident was the result of some risk to which plaintiff was subjected in the course of his employment and to which he would not have been subjected had he not been so employed nor that the risk of employment from which the injury resulted, while visiting *614 a bar, was greater for plaintiff than that occasioned by a person not engaged in the employment.
Having found that the trial court erred in holding that plaintiff was injured in the course of his employment and that the injury arose out of his employment, we must reverse and set aside the trial court's award to plaintiff of worker's compensation benefits, penalties and attorney's fees.
In light of our ruling, we find it unnecessary to address defendant's assignments of error numbers five and six.
For the foregoing reasons, the judgment of the trial court is affirmed in part, reversed in part, and plaintiff's suit is dismissed at plaintiff's costs.
AFFIRMED IN PART; REVERSED IN PART; AND DISMISSED.
LABORDE, J., dissents and assigns written reasons.
PAVY, J. Pro Tem., concurs in the result.
LABORDE, Judge, dissenting.
I respectfully dissent from the majority's opinion. The judgment of the trial court should be affirmed.
The majority accurately synopsizes the undisputed fact showing that plaintiff was required to pick up the receipts of The Outdoorsman at the close of each business day (around 10:00 p.m.). Plaintiff then followed his established business practice of driving to his home-office in Point Blue, Louisiana, in order to account for the receipts and prepare a bank deposit for the next day. It was during this trip that plaintiff was injured.
The majority, contrary to the trial court's factual finding, contends that "when plaintiff decided to have a few drinks at the bar on the highway, he abandoned whatever employment duties he might have been carrying out and was thereafter pursuing a purely personal pleasure." At 613. Having reached this conclusion, the majority applies Sanders v. Chesson, 467 So.2d 1388 (La.App. 3d Cir.1985), and determined that the accident did not arise out of plaintiff's employment.
In the first place, the majority blatently recharacterizes plaintiff's motive for stopping at the bar. The majority erroneously substituted its finding of fact for that of the trial court by finding that plaintiff interrupted his trip to have a drink. Plaintiff testified that he stopped to use the restroom. The trial court accepted plaintiff's position and found it reasonable to thank the establishment by purchasing a couple of drinks. It is boorish to use a private facility then not to show some (monetary) appreciation. In my view, plaintiff was clearly continuing his employer's mission. Bathroom breaks should not be excluded from the ambit of protection afforded by workers' compensation. See St. Alexandre v. Texas Co., 28 So.2d 385, 388 (La.App.Orl.Cir.1946).
In the second place, the majority refused to accept plaintiff's position that he had a continuing duty to promote The Outdoorsman. It was uncontradicted that plaintiff "talked-up" or advertised the products of the store while in the bar. The trial court accepted plaintiff's position. Without visible means of support, the majority discards the testimony and finds that plaintiff was merely seeking personal pleasure. It is concededly difficult to determine when a promoter can be regarded as performing his duties. The duty of determining an activity's dominant purposeemployer's business or employee's personal pleasure is assigned to the trier of fact. I find no error in the trial court's conclusion that plaintiff's principal purpose was of furthering his employer's business. The means used to accomplish that end are incidental to and within the course of his employer's business. "Purchasers are influenced in part by intangible considerations, and it is commonly known that good salesmanship results from a combination of factors, among which are the creation of good will and the making of contacts." Green v. Heard Motor Company, 224 La. 1077, 71 So.2d 849, 851 (1954).
In the third place, assuming the position of the majoritythat plaintiff abandoned *615 this employer's missionI find that plaintiff abandoned whatever personal pleasures he might have been enjoying when he decided to leave the bar. Again, it is uncontradicted that plaintiff had to travel to his home-office to conclude the business day. At most, plaintiff deviated from his mission, but clearly resumed it upon exiting the bar.

"Assuming, that plaintiff did go home on a purely personal mission, nevertheless the accident happened after he left home and when he was on the most direct route to his employment destination for the purpose of discharging his duties to his employer, and was therefore certainly within the scope of his employment. The doctrine of reentry or temporary deviation is accepted by this and other courts of this State to mean, in a matter such as this, that where the employee who is driving the vehicle provided by the employer for the transportation of himself [as plaintiff at bar was], departs from his employment and undertakes a mission of his own, such employee re-enters his employment and the scope thereof after he has completed his private mission and has begun to return to his next duty. This is especially true where the actual returnif not interrupted by the accidentcould and would have accomplished substantially the purpose of the employer which was involved in the authorized return. See Embry v. Reserve Natural Gas Company, 12 La. App. 97, 124 So. 572; Goldman v. Yellow Cab Company, 17 La.App. 450, 134 So. 351; Matheny v. U.S.F. & G., La. App., 181 So. 647; 14 Tulane Law Review 72."
Castille v. Traders And General Insurance Company, 137 So.2d 396, 399 (La. App. 3d Cir.1962). Likewise, I find that plaintiff undoubtedly resumed his duties if he ever deviated from them at all.
Finally, the majority relies on the authority of Sanders v. Chesson, 467 So.2d at 1390, to examine whether the injuries received were due to an accident "arising out of" and "in the course of" plaintiff's employment. LSA-R.S. 23:1031. The Sanders Court explained Myers v. Louisiana Ry. and Navigation Co., 140 La. 937, 74 So. 256 (1917) and Kern v. Southport Mill, 174 La. 432, 141 So. 19 (1932), two other cases relied upon by the majority. I find that plaintiff has satisfied these tests under the facts as found by the trial court.
An accident occurs "in the course of employment" when it happens during the time of employment and at a place contemplated by the employment. Guidry v. Sline Industrial Painters, Inc., 418 So.2d 626 (La. 1982). Plaintiff plainly satisfies this phase: At the time of the accident, (a) plaintiff was transfering the day's receipts from the store to the office in his house; and (b) going to the bathroom is a contemplated activity under any civilized employment.
The character or source of the risk should be examined to determine whether the accident arose out of the employment only when there is doubt as to the course of employment phase. See Sanders, supra at 1390; W. Malone and A. Johnson, "Workers' Compensation Law and Practice," 13 La. Civil Law Treatise (2d ed. 1980), sec. 191-193. Where, as here, plaintiff is in the course of his employment, any risk that the employee encounters should be considered as arising out of his employment. Our jurisprudence has implicitly followed this silent rule of law by applying either the stringent Myers rule, or the lenient Kern rule.
Here, where plaintiff was clearly in the course of his employment, the Kern test should be administered. This test, a tautology of the established "course of employment" requirement, is passed when the employee is engaged and about his employer's business at the time of the accident and the necessities of the employer's business requires that he be at the place of the accident at the time the accident occurred. Kern, 141 So. at 21. I believe this requirement is satisfied; (a) plaintiff as manager, had the duty to collect, transfer, and process the store's daily receipts; and (b) the late hour of the store's closing and the call of nature combined to require plaintiff to stop at the bar at the time of the accident.
*616 Plaintiff has satisfied the statutory and jurisprudential requirements for coverage under our worker's compensation scheme. The trial judge found that plaintiff had to stop to use the bathroom while transferring the store's receipts. The majority erroneously substituted its factual finding and determined that the dominant purpose of the stop was to procure liquor. The trial court's reasonable findings must be accepted as fact. A bathroom break is contemplated by plaintiff's employment and, as has been shown, falls within the course of and arises out of employment. Assuming that plaintiff deviated from his employment, he certainly reentered his duties upon leaving the bar and heading to his home-office. I agree with the trial court's findings and would affirm; therefore, I dissent.
NOTES
[*] Judge H. Garland Pavy of the Twenty-Seventh Judicial District Court participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] The trial court at a later hearing amended this date to June 8, 1984, the date the defendant first moved to set the matter for trial.