536 So.2d 686 (1988)
Kelly R. FOLSE, et al., Plaintiffs-Appellees,
v.
AMERICAN WELL CONTROL, et al., Defendants-Appellants.
No. 87-990.
Court of Appeal of Louisiana, Third Circuit.
December 14, 1988.
Writ Denied February 24, 1989.
*687 Jacque Cousin, New Iberia, for plaintiffs-appellees.
Michael S. O'Brien, Lafayette, for defendants-appellants.
Before DOMENGEAUX, DOUCET and YELVERTON, JJ.
DOUCET, Judge.
Plaintiffs in this case are seeking worker's compensation benefits for the death of their husband and father, Edgar P. Folse, III. Named as defendants are his employer, American Well Control, and its insurer, Aetna Casualty & Surety Company. From an adverse judgment, defendants have appealed. Plaintiffs have answered the appeal, and seek a modification of the district court judgment to include penalties and attorney's fees.
The issues on appeal are: (1) Whether Mr. Folse was acting within the course and scope of his employment at the time of the accident in which he was killed; (2) Whether Mr. Folse was intoxicated and whether that intoxication was a substantial cause of the accident; and (3) Whether plaintiffs are entitled to penalties and attorney's fees due to the defendants' non-payment of plaintiffs' claim for benefits.

FACTS
Mr. Folse was the shop foreman for the defendant, American Well Control, an oilfield service company located in Broussard, Louisiana. He more or less controlled operations at the shop. Working hours were normally from eight to five, but at times the work would keep him later. Mr. Folse was often subject to twenty-four hour call, and sometimes returned to work in the evenings and worked weekends when he was called. As to his activities and whereabouts, he was pretty much under his own control. He was furnished a company-owned *688 truck which he used in his work and in traveling to and from work. At night and on weekends he kept the truck at his home in New Iberia. He was also furnished a "beeper" which he carried with him when he was on call. Besides his duties as shop foreman, Mr. Folse's employment duties included the entertainment of customers. This duty was sometimes performed at "lounges," and the company reimbursed him for his expenses.
On December 6, 1985, some time after 5 p.m., Mr. Folse left his employer's shop in Broussard and drove to the Hill-Behan Lumber Company in Lafayette, about a five or ten minute drive from Broussard, where he purchased some security lights for his employer's business. Just before leaving the shop, Mr. Folse had instructed one of the other employees to be available in anticipation of them having to return to work that night. At about 8 p.m. that evening, Mr. Folse telephoned Mrs. Folse just to let her know that he was at Mr. C's, a restaurant and lounge. Mr. C's is located in the vicinity of the Hill-Behan Lumber Company, and is on the way to the Folse's home from the lumber company. Except for the telephone call from Mr. C's, nothing is known of Mr. Folse's whereabouts or activities between about 6 p.m. that evening, when he left the Hill-Behan Lumber Company, and about 11 p.m., when he was involved in an automobile accident in which he was killed.
The accident occurred on Louisiana Highway 182, just before the city limits of New Iberia, as Mr. Folse was driving the company-owned truck towards his home in New Iberia. Mr. Folse was traveling from the direction of Lafayette and Broussard, along the same route he regularly traveled in going to and from his employer's shop. Mr. Folse was negotiating a curve to his right and, as the road began to straighten out after the curve, he veered across the center line and into the left lane, where he collided with an oncoming vehicle. When an ambulance and police arrived at the scene of the accident at 11:11 p.m., Mr. Folse had no vital signs, and he was pronounced dead by the coroner within one hour of the collision. A blood sample drawn from Mr. Folse's body was tested and showed an alcohol level of .16 percent. At the time of the accident, Mr. Folse had with him the security lights he had purchased and his "beeper."

ACCIDENT IN THE COURSE OF AND ARISING OUT OF EMPLOYMENT
The first issue is whether the accident occurred in the course of Mr. Folse's employment. LSA-R.S. 23:1031 provides that compensation shall be paid by an employer for an accidental injury to an employee "arising out of and in the course and scope of his employment." Mr. Folse's automobile accident must have arisen out of and been in the course and scope of his employment in order for the plaintiff to be entitled to recovery in this suit.
This court recently considered and reviewed this requirement in Dupre v. Louisiana Retailers Association Self-Insurers Fund, 509 So.2d 608 (La.App. 3rd Cir.1987), and noted that the terms "arising out of" and "in the course of" are not synonymous. Then quoting from its decision in Sanders v. Chesson, 467 So.2d 1388 (La.App. 3rd Cir.1985), the court noted that:
"`An accident occurs in the course of employment when it happens during the time of employment and at a place contemplated by the employment." Dupre, supra, at page 612.
In this same decision, the court noted the test, adopted by the Supreme Court in Kern v. Southport Mill, 174 La. 432, 141 So. 19 (1932), for determining whether the accident was one arising out of the employment. The court stated:
"In determining ... whether an accident `arose out of' the employment, it is necessary to consider only this: (1) Was the employee engaged about his employer's business and not merely pursuing his own business or pleasure; and (2) Did the necessities of that employer's business reasonably require that the employee be at the place of the accident at the time the accident occurred?" Dupre, supra, at page 612.
*689 The general rule is that injuries sustained by an employee while in transit to or from work do not arise out of his employment and are not within the course and scope of his employment. However, there are exceptions to this general rule. In Boutte v. Mudd Separators, Inc., 236 So.2d 906 (La.App. 3rd Cir.1970), this court stated:
"Our jurisprudence is established that where the employee is furnished a vehicle to drive to and from work, an accident is compensable which occurs on one of these trips provided the trip is reasonably contemplated by the contract of employment as being one which the employee would make in the interest of his employer's business, (cites omitted)."
Mr. Folse was engaged about his employer's business when he drove to the Hill-Behan Lumber Company to purchase some security lights just before 6 p.m. on the evening of the accident at issue. The fact that he did not return immediately after this mission to his employer's place of business or to his home is not a determinative factor. The important facts are that Mr. Folse was subject to twenty-four hour call on a regular basis, that his employer furnished him with a vehicle to travel to and from work, that the vehicle was kept at Mr. Folse's home so that it would be available for his use to travel to work when called, that he was driving this vehicle towards his home at the time of the accident, and that Mr. Folse generally had authority to control his own activities and whereabouts.
It is not known if Mr. Folse embarked on a personal mission after leaving the Hill-Behan Lumber Company. All that is known is that he phoned home at about eight o'clock that evening to inform his wife that he was at Mr. C's. Since Mr. Folse's employment duties included the entertainment of customers, sometimes at places such as Mr. C's, and he received reimbursement for his entertainment expenses, he may have been engaged in business that evening. However, even assuming that Mr. Folse was engaged in a personal mission that evening, this does not preclude the finding that he re-entered his employment and the course and scope thereof when he began driving the company-owned vehicle back to his home in New Iberia.
In Jagneaux v. Marquette Casualty Company, 135 So.2d 794 (La.App. 3rd Cir. 1961), this court stated:
"The doctrine of re-entry or temporary deviation is accepted by this and other courts of this State to mean, in a matter such as this, that where the employee who was driving the vehicle provided by the employer for the transportation of himself and other employees, departs from his employment and undertakes a mission of his own, such employee re-enters his employment and the scope thereof after he has completed his private mission and has begun to return to his next duty, or, after such completion, has begun to return the vehicle to the place where it belongs."
Accordingly, we find that even if Mr. Folse was on a personal mission, he re-entered his employment and the course and scope thereof when he left Mr. C's and began driving the company-owned vehicle towards his home, which was his next duty, in order to have the vehicle available for him to drive to work if called. Additionally, Mr. Folse's home was the place where the vehicle was normally kept. Also, such action by Mr. Folse is consistent with the requirement of Boutte, supra, in that the trip was "reasonably contemplated by the contract of employment as being one which the employer would make in the interest of his employer's business." Mr. Folse's heading in the direction of his home was bringing him closer to the completion of his employment mission, which was to bring the company-owned vehicle to his home so that he would be ready to respond to calls or drive to work, and thus was in the interest of his employer's business. Also, such a trip was contemplated by the employment contract, since the employer furnished a vehicle to Mr. Folse precisely for this purpose and gave him wide latitude in carrying out his duties.
The facts of this case are also consistent with the requirement noted in Dupre, supra, *690 in that the accident happened during the time of Mr. Folse's employment, since he was driving toward his home in the vehicle provided by his employer for that purpose, and was also at a place contemplated by his employmenton the road to his home.
Further, these facts fit the test prescribed by Kern, supra, in that when Mr. Folse drove the company-owned vehicle back towards his home he was again engaged about his employer's business, and the necessities of his employer's business reasonably required him to be at the place of the accident at the time the accident occurred.
Thus, we find that the trial court was correct in finding that the accident in which Mr. Folse was killed was one arising out of and in the course and scope of his employment.

INTOXICATION
La.R.S. 23:1081 provides in pertinent part:
"Defenses:
(1) No compensation shall be allowed for an injury caused:
* * * * * *
(b) by the injured employee's intoxication at the time of injury, or
* * * * * *
(2) In determining whether or not an employer shall be exempt from and relieved of paying compensation because of injury sustained by an employee for any cause or reason set forth in this Subsection, the burden of proof shall be upon the employer."
This provision is substantially the same as the one in effect prior to the 1983 amendment.[1]
In order for the defendants to prevail, they must prove by a preponderance of the evidence both the fact of intoxication and that the intoxication was a substantial cause of the accident. Ray v. Superior Iron Works and Supply Company, Inc., 284 So.2d 140 (La.App. 3rd Cir.1973), writ denied 286 So.2d 365 (La.1973). The jurisprudence does not furnish clear guidelines for determining when an employee is "intoxicated" within the meaning of the statute. For purposes of the D.W.I. statute, La.R.S. 32:662 creates a presumption of "being under the influence of alcoholic beverages" when a person is shown to have .10 percent or more by weight of alcohol in his blood. However, this presumption is not applicable in civil actions. Parker v. Krogers, Inc., 394 So.2d 1178 (La.1981).
Regarding the question of causation, the jurisprudence uniformly holds that the defendant must prove by some competent evidence other than the mere fact of intoxication that the accident was caused by the intoxication. Frost v. Albright, 460 So.2d 1125 (La.App. 2nd Cir.1984), writ denied 462 So.2d 1266 (La.1985); Marie v. Casualty Reciprocal Exchange, 424 So.2d 1121 (La.App. 1st Cir.1982); O'Neal v. Home Insurance Company, 404 So.2d 1355 (La. App. 2nd Cir.1981), writ denied 409 So.2d 655 (La.1982); Ray v. Superior Iron Works and Supply Company, Inc., supra.
In the above cited cases, in order to prove causation, the Courts have generally looked for some evidence other than the mere happening of the accident, such as behavior that would clearly demonstrate the employee's intoxication and resulting impairment or loss of control. Such behavior could include slurring of speech, drowsiness, staggering, and erratic driving prior to the accident. At the very least, the above cited cases require a showing that the accident was of a sort that would not ordinarily happen absent intoxication.
In the present case the facts are undisputed. The accident happened at about eleven o'clock in the evening on Louisiana Highway 182 about one-half mile west of the corporate limits of New Iberia. The scene of the accident was about a 30 minute drive from Mr. C's and was just at the end of a long S-curve described by Captain Myers of the Iberia Parish Sheriff's Department as one of the most popular *691 stretches of two-lane highway in the parish for wrecks. The vehicle driven by Mr. Folse was just coming out of the curve traveling toward New Iberia when it veered over the center line and collided, left-front to left-front, with a vehicle traveling in the opposite direction in the other lane. Mr. Folse was found dead at the scene of the accident. None of the occupants of the other vehicle were called to testify. The investigating officer inspected the roadway for a distance of about six-tenths of a mile back from the scene of the accident and found no evidence of irregular driving on the part of Mr. Folse. Mr. Folse's blood sample showed an alcohol level of .16 percent.
The defendants presented the testimony of a pathologist, Dr. James A. Freeman. Dr. Freeman testified that he was conversant with the literature concerning research on the effects of alcohol on one's ability to operate an automobile. He stated that according to the literature, a person with an alcohol level above .15 percent is usually considered as being "drunk," meaning "under the influence of alcohol," and that anything above .10 percent would be "drunk" according to the "legal term." He agreed, however, that a given amount of alcohol in the blood produces different effects in different people and that no two individuals are necessarily adversely affected to the same extent by the same level of alcohol. He further stated that even the same individual may not be affected in the same way by the same level of alcohol at different times.
Regarding the effect of .16 percent blood alcohol level as applied to Mr. Folse at the time of the accident, Dr. Freeman stated, "... I certainly would agree that there is a significant causal relationship, suspected causal relationship." He explained that since he did not know Mr. Folse, his testimony was from the point of view of general principles and not from this specific case. Further, Dr. Freeman stated:
"I did not say this caused him to get in a wreck. I said there could be a significant causal relationship."
Dr. Emil Laga, a pathologist who testified for the plaintiff, was more definite. His testimony was to the effect that given all the facts available, one simply could not say that intoxication was a significant cause of the accident in this particular case. He agreed that the adverse effect of alcohol is different in different people, and that even the same individual may be affected differently by the same level of alcohol at different times. He explained some of the variable factors which affect the degree of impairment from alcohol, such as age, sex, time of day, tolerance to impairment, and drinking experience. Notably, he stated that most fatal accidents involving alcohol happen to young males (15 to 19 years old); there is a higher actual impairment in women than in men; alcohol related accidents occur more frequently in the early morning and early evening (7:00 to 8:00 p.m.) than in the late evening; research shows more impairment during intake of alcohol than during discharge; and experienced drinkers are more tolerant and less affected by alcohol than those who are "alcohol naive." Dr. Laga stated that experienced drinkers are much less impaired by alcohol in the case of special performance skills, such as driving, due to what he described as a learning process. It should be noted that the research material on which Dr. Freeman relied also demonstrates the difference in impairment between inexperienced and experienced drinkers.
The evidence shows that Mr. Folse was 29 years old; that he drank almost daily; that on social occasions with his wife and sometimes after work he would drink from six to twelve beers; that he always drove home on these occasions and never showed any signs of impairment due to alcohol; that he was never involved in a traffic accident; and that he had only one traffic violation, when he was ticketed for not coming to a complete stop at a stop sign. Considering Mr. Folse's age and sex, the time of the accident, and Mr. Folse's drinking experience, Dr. Laga agreed that Mr. Folse, at the time of the accident, would probably fall into the category of those who would be least affected by the alcohol content in his blood.
*692 In this case, the expert testimony alone is not enough to establish that Mr. Folse was intoxicated at the time of the accident. No other evidence was offered concerning any behavior of Mr. Folse prior to the accident that would suggest intoxication.
However, even assuming Mr. Folse was intoxicated at the time of the accident, there is insufficient evidence that intoxication was a substantial cause of the accident. Both the state trooper who investigated the accident and Captain Myers of the Iberia Parish Sheriff's Department testified that from their observations and experience, it is not unusual for a driver coming out of a curve to veer toward the center line and to cross the center line. They both testified that people seem to have a tendency to do this. The state trooper testified that he has stopped people for this sort of thing numerous times and that, in his experience, it is not something that is necessarily related to alcohol.
The trial judge, in his reasons for judgment dictated from the bench, noted the testimony concerning the tendency of drivers to veer toward and across the center line in curves. He also took into account that the investigating officer had examined the roadway for a distance of six-tenths of a mile back from the scene of the accident and found no evidence of irregular driving. The judge also pointed out that Mr. Folse had negotiated the entire stretch of highway from Lafayette to just before New Iberia, apparently without incident. Considering this evidence, the trial judge found that Mr. Folse's blood alcohol level of .16 percent was not a substantial cause of the accident.
Considering the reasons cited by the trial judge, and also considering the inconclusiveness of the scientific evidence of alcohol impairment and the absence of other evidence of alcohol impairment, we cannot say that the trial judge erred in finding that Mr. Folse's blood alcohol level was not a substantial cause of the accident.
Accordingly, we affirm the portion of the trial court judgment awarding the plaintiffs benefits.

PENALTIES AND ATTORNEY'S FEES
The trial court denied plaintiffs' request for statutory penalties and attorney's fees due to defendants' failure to pay compensation benefits. Plaintiffs have appealed this portion of the trial court's judgment.
The assessment of penalties is governed by LSA-R.S. 23:1201(B) and (E) of the 1983 revision of the Worker's Compensation Act, which provide, in pertinent part:
"B. The first installment of compensation payable for temporary total disability, permanent total disability or death shall become due on the fourteenth day after the employer has knowledge of the injury or death and resulting loss of income, on which date all such compensation then due shall be paid.
"E. If any installment of compensation payable without an order is not paid within the time period provided in Subsections (B), (C), or (D) of this Section, there shall be added to such unpaid installment a penalty of an amount equal to twelve percent thereof, which shall be paid at the same time as, and in addition to, such installment of compensation, unless such nonpayment results from conditions over which the employer or insurer had no control. Whenever the employee's right to such benefits has been reasonably controverted by the employer or his insurer, the penalties set forth in this Subsection shall not apply. The twelve percent additional payment shall be assessed against either the employer or the insurer, depending upon who was at fault in causing the delay."
In this case, Mr. Folse's employer had almost immediate notice of his death. The employer and its insurer had failed to pay any benefits by the time of trial, and these benefits are yet unpaid. Thus, according to the statute, penalties were consequently due after trial unless the defendants could show either that non-payment resulted from conditions over which they had no control or if the plaintiffs' rights to such benefits had been reasonably controverted. Defendant insurer does not assert that the non-payment resulted from conditions over which it had no control. Thus, the sole *693 question is whether the plaintiffs' right to benefits has been reasonably controverted.
The records of the defendant insurer reveal no stated reasons for the non-payment of benefits except in the claim representative's assignment of the suit to the to the insurer's legal department on June 3, 1986, after suit was filed. According to that document, the claim was denied based on the accident not being within the course and scope of Mr. Folse's employment and, alternatively, based on the fact that Mr. Folse was intoxicated and this intoxication caused the accident.
It is not known on what date the claim representative decided that the intoxication defense should be asserted, since at the time of trial he no longer worked for the defendant and he did not testify. Also, the intoxication defense was not asserted in the original answer, but only in the amended answer filed on January 20, 1987. However, the governing statute quoted above merely provides:
"Whenever the employee's right has been reasonably controverted by the employer or his insurer, the penalties set forth in this Subsection shall not apply." (Emphasis supplied)
Thus, the statute does not specify a certain time by which the claim for benefits must be reasonably controverted and it is of no moment that the intoxication defense was not asserted until the amended answer.
Defendants' defense of intoxication was a serious issue about which reasonable minds could differ. Mr. Folse's blood sample showed a blood alcohol level of .16 percent. The defendants introduced expert testimony as to the debilitating effect of that blood alcohol level. The accident report showed that Mr. Folse's vehicle crossed the center line of the highway into the oncoming lane of traffic. The investigating officer, a state trooper, testified that of approximately twenty accidents he had personally investigated on the stretch of highway where the accident occurred, all but two of them were alcohol related. Defendants, relying on these facts, could reasonably have believed that such a blood alcohol level resulted in intoxication which impaired Mr. Folse's driving ability to such an extent that it was a substantial cause of the accident and, consequently, that compensation benefits were not due. At the very least, reasonable minds could differ about whether this accident was of a sort that would not ordinarily happen absent intoxication. We will not penalize defendants under these circumstances and we find that defendants had a reasonable basis to believe that compensation was not due to the plaintiffs. Accordingly, we affirm the portion of the trial court judgment denying plaintiffs' penalties.
Turning to the issue of attorney's fees, in Theriot v. American Employees Insurance Company, 482 So.2d 648 (La.App. 3rd Cir.1986), this Court noted:
"... The 1983 revision of R.S. 23:1201.2 provides in pertinent part:
"`Any insurer liable for claims arising under this Chapter, and any employer whose liability for claims arising under this Chapter is not covered by insurance, shall pay the amount of any claim due under this Chapter within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject employer or insurer, in addition to the amount of the claim due to payment of all reasonable attorney's fees for the prosecution and collection of such claim ...'
"(2) The arbitrary and capricious standard used under the prior law obviously still applies with regards to attorney's fees."
In addition to its actual knowledge of Mr. Folse's death, the employer was formally notified in writing of plaintiffs' claim for benefits by a letter from plaintiffs' attorney dated February 25, 1986, received on February 27, 1986. The defendants have failed to make any payment on this claim to date. Thus, according to the statute, defendants are liable for attorney's fees if this failure to pay is found to be arbitrary, capricious, or without probable cause.
*694 For the same reasons discussed above regarding our finding that the plaintiffs' claim has been reasonably controverted, we find that the defendants' failure to pay benefits was not arbitrary, capricious, or without probable cause, and we affirm the portion of the trial court judgment denying plaintiffs attorney's fees.
Accordingly, we affirm the trial court judgment and order that the costs of appeal be shared equally between plaintiffs and defendants.
AFFIRMED.
NOTES
[1] See the comment under "Source" immediately following R.S. 23:1081.