liGRISBAUM, Judge.
Plaintiff-appellant appeals the trial court’s determination that his fall from a scaffold ladder was brought about by his intoxication. A drug screen performed after his accident revealed a positive presence of cocaine. Because appellant could not show his intoxication did not contribute to his accident, his claim for worker’s compensation benefits was dismissed. We affirm.

FACTS

On January 28, 1992, plaintiff-appellant, Robert Meliet, was working for Brown & Root Industrial Services, Inc. (Brown & Root) at the Shell Norco plant. He and two co-workers, James Schliegelmeyer, Jr. and Glaidor Huszar, were in the process of dismantling a scaffold at the plant. After working some 20 to 30 |2minutes, Huszar took a break. He descended the scaffold.[1] Several minutes later, Meliet decided to go down the ladder. According to Meliet’s own testimony, when he stepped off the scaffold and onto the ladder, the ladder came away from the scaffold. As a result, appellant fell some 25 to 30 feet to the ground. Meliet sustained injuries of a shattered right elbow, broken left wrist, cracked right kneecap, and broken bones in his facial area.
Meliet was taken by ambulance to River Parishes Hospital in LaPlace, Louisiana. Meanwhile his supervisor, Mark Bennett, climbed the scaffold to figure out what happened.[2] Bennett testified he examined the ladder and the clamp used to hold the ladder to the scaffold. According to Bennett, the bolt on the clamp had been backed all the way off the clamp. Bennett stated the clamp would not come off the scaffold, if the bolt were only partially loosened. Bennett testified it was not possible to go up and down the ladder once the bolt was loosened because the ladder would break loose from the scaffold.[3] Meliet’s co-workers examined the clamp and agreed with Bennett that there was nothing wrong with the clamp and that *107 the bolt had been purposely loosened with a wrench. Every one of appellant’s co-workers testified they did not loosen the bolt on the clamp.
Brown & Root authorized the performance of all necessary treatment. While at River Parishes Hospital, a urine specimen was obtained from Meliet in order to perform a drug test. Brown & Root maintained a written drug abuse policy for drug testing. The record reflects appellant was aware of the policy andjjhad signed it. As a condition of his employment and that policy, appellant had consented to the collection of urine specimens for drug testing purposes. There was also the testimony of Pat Fuller, Brown & Root’s safety supervisor, that River Parishes Hospital had a letter on file requesting that drug tests be performed on Brown & Root employees following accidents.
After a urine specimen was taken, it was sealed and sent to a drug laboratory in Houston, Texas. The results indicated the presence of cocaine. After trial on September 15 and 20, 1993, the hearing officer entered judgment in defendant-appellee’s favor. The trial court found appellant was intoxicated at the time of his accident and did not carry the burden of showing his intoxication was not a contributing cause of the accident.

STANDARD OF REVIEW

The trial court’s factual findings will not be disturbed absent manifest error. If there is a conflict in the testimony, reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are reasonable. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978). Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989).
Applicable Law
Prior to 1990, the standard for a defendant to prevail under an intoxication defense was to prove by a preponderance of the evidence both the fact of intoxication and that the intoxication was a substantial cause of the accident. See Folse v. Am. Well Control, 536 So.2d 686 (La.App. 3d Cir.1988), writ denied, 538 So.2d 592 (La.1989). The jurisprudence, at that time, held a defendant must prove by some competent evidence other than the fact of intoxication that the accident was caused by the intoxication. See Folse, supra and authority therein.
|4However, effective in 1990, the Legislature changed the law in this area and granted presumptions that could be used regarding the intoxication defense available to employers in La.R.S. 23:1081. Relevant to this matter, La.R.S. 23:1081(5) was enacted, which provides: “If there was, at the time of the accident, evidence of either on or off the job use of a nonprescribed controlled substance as defined in 21 U.S.C. 812, Schedules I, II, III, IV, and V, it shall be presumed that the employee was intoxicated.”
Furthermore, La.R.S. 23:1081(12) was added, which provides:
Notwithstanding any language to the contrary, once the employer has met the burden of proving intoxication at the time of the accident, it shall be presumed that the accident was caused by the intoxication. The burden of proof then is placed upon the employee to prove that the intoxication was not a contributing cause of the accident in order to defeat the intoxication defense of the employer.
No longer does an employer bear the burden of proving the accident was caused by the employee’s intoxication. Now, the employee must rebut the presumption by showing his intoxication did not contribute to the cause of the accident.
Appellant cites our prior decision of Johnson v. Riverplex Int’l, 609 So.2d 1005 (La.App. 5th Cir.1992), writ denied, 613 So.2d 627 (La.1993) for the proposition that expert testimony alone is insufficient to establish a worker was intoxicated at the time of his accident where the co-workers of the employee did not testify he had been acting in an intoxicated manner prior to the accident.
Johnson can be distinguished from the present matter. Although the autopsy of Johnson revealed the presence of cocaine and marijuana, his co-workers did not observe any intoxicated behavior by Johnson at the *108 time of his accident. Johnson was in the process of off-loading rice sacks in the hold of a ship as they were lowered down by a crane. Johnson somehow became ^entangled in the hooks at the end of the cables used by the crane operator to raise or lower the rice. Johnson was hoisted some 60-80 feet when he dropped, causing severe injuries which ultimately resulted in his death.
Like Johnson, no co-worker of Meliet saw the accident actually happen, nor precisely what he was doing right before he fell. The record indicated Meliet was alone on top of a scaffold for a period of 15-20 minutes before he fell. There was the testimony of Dr. Ernest Lykissa, who indicated the level of cocaine found in Meliet’s urine could have indicated he had ingested cocaine a short time before the specimen was taken.[4] Thus, the testimony of appellant’s co-workers indicating they observed no abnormal behavior that morning is not indicative of when he could have ingested the cocaine. The fact no one observed Meliet for some time before his fall, coupled with his positive drug screen, is not sufficiently countered by the testimony of Meliet’s co-workers, who indicated that, before he fell, he appeared normal to them at different points of the day. Appellant was alone and unobserved before his accident; thus, we find the evidence he presented does not overcome the presumption his intoxication caused his fall.
After a careful review of the record in its entirety, we cannot say the trial court was manifestly erroneous in determining the drug screen was performed properly and that appellant did not meet his burden of showing his intoxication was not a contributing cause of his accident. Ergo, the trial court’s decision is hereby affirmed.
For the reasons assigned, the trial court’s judgment is hereby affirmed and all costs of this appeal are to be assessed against the appellant.

AFFIRMED

. He used the same ladder appellant used.

. No one saw appellant actually fall from the ladder, nor did anyone see what he was doing just before he fell.

.The record reflects that both Huszar and Meliet ascended this ladder without incident, and Hus-zar descended the ladder and noticed no problem with it before Meliet's accident.

. Meliet was taken to the River Parishes Hospital emergency room soon after his accident.