413 So.2d 309 (1982)
Wilton CARTER, Plaintiff-Appellant,
v.
MONTGOMERY WARD & CO., INC., Defendant-Appellee.
No. 8714.
Court of Appeal of Louisiana, Third Circuit.
April 14, 1982.
*310 Edward D. Rubin, Lafayette, for plaintiff-appellant.
Davidson, Meaux, Sonnier & Roy, Richard C. Meaux and M. Candice Hattan, Lafayette, for defendant-appellee.
Before GUIDRY, CUTRER and STOKER, JJ.
STOKER, Judge.
This is a suit for workmen's compensation. Plaintiff-appellant Wilton Carter injured his left ankle while changing a tire as an employee of defendant in its automotive repair shop. Plaintiff-appellant (Carter) alleged in his petition that he suffered "an injury to his leg and ankle." However, as the case was tried it appears that Carter is seeking compensation benefits based on an injury to his left knee which he contends was sustained in the same accident which injured his ankle. There is no amendment to the pleadings alleging injury to the left knee.
Carter alleged in his petition that although his employer (referred to herein as Montgomery Ward) provided medical treatment and care to him through its insurance program, defendant-appellee Montgomery Ward has failed and refused to pay weekly compensation benefits to which Carter is entitled. Apparently, appellant seeks compensation for total and permanent disability or at least temporary total disability under the Louisiana Workmen's Compensation Law.
Defendant-appellee, Montgomery Ward, answered the petition denying that it had failed to pay medical and compensation benefits. On the contrary Montgomery Ward alleged it paid Carter $5,209.80 in compensation benefits and $1,366.74 in medical benefits. Without admitting that Carter was entitled to anything under the compensation law, Montgomery Ward alleged that, if Carter was entitled to benefits for a work connected injury, he was actually paid beyond the date of any disability he suffered, and Montgomery Ward prays that "it be reimbursed for all compensation paid to the plaintiff subsequent to the time he was well and capable of performing his usual and customary work." In its answer the appellee addressed the issue of injury to Carter's knee by alleging that Carter sustained a knee injury at his grandmother's home months after his work-connected accident. Appellee further denies that Carter sustained a knee injury in the course and scope of employment.

ISSUES
As the case was tried, and as it comes to us on appeal, the issues are (1) whether plaintiff-appellant sustained a knee injury *311 at the time he sustained his ankle injury on or about February 23, 1980, which continues to disable him, and (2) if plaintiff-appellant did not sustain a knee injury on or about February 23, 1980, whether appellee paid Carter compensation beyond the disability incurred as a result of the ankle injury for which it is entitled to reimbursement.

TRIAL COURT ACTION
The trial court dismissed plaintiff's demands and ruled further in favor of defendant granting judgment to the latter against Carter for reimbursement of medical expenses paid on Carter's behalf after July 2, 1980, and for all compensation benefits paid to Carter from July 2, 1980, through December 13, 1980, amounting to $3,469.57. Plaintiff-appellant was taxed with costs.

DISCUSSION OF FACTS
The trial court handed down an excellent written summary of the facts and issues and well stated reasons for its judgment in this case. We agree with the trial court's reasons for judgment insofar as they reject plaintiff-appellant's demands for further compensation. We do not agree with the trial court's holding that Montgomery Ward & Co., Inc., is entitled to reimbursement for payments made to plaintiff-appellant after July 2, 1980. On this point we reverse. The trial court's reasons for judgment are set forth here in full, and with respect to the first issue mentioned above we adopt them as our own.

"REASONS FOR JUDGMENT
"This is a suit brought by plaintiff, Wilton Carter, against defendant Montgomery Ward & Co., Inc., seeking the reinstitution of weekly workmen's compensation benefits together with legal interest from due date until paid. Plaintiff also seeks penalties and reasonable attorney's fees for the defendant's alleged arbitrary and capricious refusal to pay. Defendant, Montgomery Ward, filed an answer denying that plaintiff was injured in the course and scope of his employment. Defendant further asserts that it nonetheless paid plaintiff workmen's compensation benefits during plaintiff's entire period of disability and long after he was cured. Defendant also prays that it be reimbursed for all compensation paid to plaintiff subsequent to the time that he was well and capable of performing his usual and customary work.
"Plaintiff asserts that he injured his ankle and knee while repairing a tire in the course and scope of his employment. Defendant avers that if in fact plaintiff did sustain an injury at work it was an injury to his ankle only and not to his knee.
"The issues to be decided by the Court are: (1) whether the plaintiff sustained an injury during the course and scope of his employment; and (2) the nature and extent of the plaintiff's injury.
"The Court is satisfied that plaintiff has proven by the preponderance of the evidence that he injured his left ankle while changing a tire while on a service call in the course and scope of his employment on the evening of February 22, 1980.
"The Court, however, is not satisfied that plaintiff has carried his burden of proving that his knee injury was caused by or related to the same accident or the ankle injury.
"The evidence shows that the accident was reported by his supervisor to defendant on February 3, 1980, and that plaintiff was sent to our Lady of Lourdes Hospital for emergency room treatment. The record reveals that plaintiff complained only of his left ankle.
"On February 26, 1980, plaintiff was examined by Dr. Ray C. Boyer, a general practitioner, who found that plaintiff had a sprained left ankle. Plaintiff did not have any complaints about his knee at that time nor at any time during his next five visits to Dr. Boyer's office.
"On March 28, 1980, Dr. Boyer, after examining plaintiff and seeing that he no longer had a limp, discharged plaintiff to return to work. (Dr. Boyer's deposition, page 14, line 23). Although plaintiff still had some swelling about the ankle, Dr. Boyer had no reservations with regard to releasing him to go back to work.
*312 "About a month later, on April 30, 1980, Dr. Boyer again saw the plaintiff, who at that time, for the first time, complained of the pain going from the ankle up into the knee. The doctor found no physical abnormality in the knee but did find that there was still minimal swelling in the ankle which, according to the physician, can persist for six to eight months. (Dr. Boyer's deposition, page 16, line 10 et seq).
"Plaintiff was seen by Dr. Boyer three more timesMay 14, May 21 and June 4 and at not one of these visits did plaintiff voice a complaint about problems or pain in his knee (Dr. Boyer's deposition, page 22, line 20 and 21).
"On the May 14th visit, plaintiff's ankle was still swollen and plaintiff indicated that he had some tenderness in the lateral malleolus or bony prominence on the outside of the ankle. Because of his continued complaints about his ankle, Dr. Boyer referred plaintiff to see Dr. Fred C. Webre, an orthopaedic surgeon in Lafayette.
"On the May 21st visit, plaintiff stated that he could walk in the morning but limped in the afternoon (Dr. Boyer's deposition, page 19, line 23 et seq). Dr. Boyer was of the opinion that this was not consistent, especially in light of his findings. Dr. Boyer opined that plaintiff should have been walking fine by this time (Dr. Boyer's deposition, page 20, line 15 et seq).
"Plaintiff was examined by Dr. Boyer for the last time on June 4, 1980. Although plaintiff's ankle was still somewhat swollen (which was normal), Dr. Boyer could find nothing significantly wrong and was of the opinion that plaintiff could and should return to work (Dr. Boyer's deposition, page 22, line 11 et seq).
"Dr. Fred C. Webre first saw plaintiff on May 15, 1980, and at that time, plaintiff gave him a history that he had slipped and fallen, and had twisted his left ankle while changing a tire. Plaintiff related that he had been discharged by Dr. Boyer to return to work about six weeks post-accident and that he worked for two and a half weeks, limping all the time. At that time, plaintiff was complaining of the side of the left ankle, was using a cane, and gave no history of a knee injury (Dr. Webre's deposition, page 7, lines 21 et seq). The doctor found soft tissues swelling on the front and side of the ankle, some limited motion of the ankle, and his diagnosis was that plaintiff had residuals of a straining injury to the ankle. (Dr. Webre's deposition, page 8, lines 15 et seq).
"Dr. Webre again saw plaintiff on May 29, 1980. Although the swelling had gone down, plaintiff still complained of soreness on the side of the ankle. Plaintiff had no complaints about his knee. He was advised by Dr. Webre to increase his walking. (Dr. Webre's deposition, page 8, lines 23, et seq).
"On June 11, 1980, plaintiff was again seen by Dr. Webre who found slight soft tissue swelling on the medial and lateral aspects of the ankle. X-rays showed no ligamentous laxity in the ankle. Plaintiff said he was walking more and he was advised to return to regular work shoes with thick socks and to increase his walking. Plaintiff had no complaints about his knee. (Webre's deposition, page 9, lines 14, et seq).
"Plaintiff was again seen by Dr. Webre on July 2, 1980, and for the first time plaintiff complained that his left knee was giving him trouble. Plaintiff said that his left knee was bothering him more than his ankle and he stated that his ankle was "much better". (Dr. Webre's deposition, page 10, lines 25 et seq). Plaintiff had vague complaints about the knee giving away, but Dr. Webre found no effusion of the knee, no ligamentous instability, and no evidence of internal derangement, although X-rays did show a slight increase in bone density in the medial condyle. Dr. Webre was of the opinion that this increased density was the result of an old process of some type and he knew of no possibilities where this density would be traumatically induced. He thought that it may be a tumor, but whether malignant or benign, tumors are not caused by trauma. (Dr. Webre's deposition, page 16, lines 4 et seq). Dr. Webre was of the opinion that the finding does not give the appearance of trauma, and if it is pathological, then he doesn't think it is a *313 traumatic thing but could be an abscess from childhood. At this time, Dr. Webre sent him to see Dr. J. Lee Leonard, another orthopaedic surgeon in the same building, for consultation and another opinion.
"Thus we see that the ankle on July 2, 1980, is `much better'. We also note that the first complaint to Dr. Webre of the knee is on July 2, 1980.
"Dr. Webre saw plaintiff again on February 27, 1981, and at that time, plaintiff was working light duty but complained of pain in the front of the knee under the kneecap. Plaintiff was wearing a knee cage. There were no complaints about the ankle at that time. He had full motion in flexion and extension, and there was no effusion of the knee, alignment of the knee cap was good, retinaculum was free and there were arthroscopic scars about the knee. Both thighs were equal in measurement as well as the calves. Dr. Webre found no evidence or any specific muscle weakness, he also found the cruciate and collateral ligaments intact; he found no rotary instability of the knee; he found no indication of internal derangement.
"The Court concludes that plaintiff's ankle was well sufficiently to return to his former duties as of July 2, 1980. The Court also holds that workmen's compensation benefits do not accrue to plaintiff after this date and further, that medical expenses incurred thereafter for the knee are not due to plaintiff by defendant.
"Dr. Leonard saw and treated plaintiff only for the alleged injury to his left knee. It is interesting to note that plaintiff, for the first time told a physician, Dr. Leonard, that his left knee, as well as his ankle, was twisted at the time of the accident. (Dr. Leonard's deposition, page 5, line 6 et seq). Dr. Leonard first examined plaintiff on July 21, 1980, at which time plaintiff complained that his knee would give way on him and that he had popping in his knee but no locking. (Dr. Leonard's deposition, page 5, line 12 and 13). The doctor found full flexion and extension, no effusion, no signs of instability, and he had a negative lockman's test and a negative pivot shift. (Dr. Leonard's deposition, page 5, line 24 et seq). Further, plaintiff had no atrophy. Dr. Leonard continued to treat the patient until October 20, 1980, when he discharged him to return to work insofar as his alleged injury to the knee. It is significant that on August 19, 1980, Dr. Leonard performed an arthroscopic examination and found no internal pathology. Dr. Leonard stated that he never found any objective signs of injury and in his opinion his X-rays never showed anything that is pathologic on Mr. Carter. (Dr. Leonard's deposition, page 13, lines 4 et seq).
"On March 10, 1981, plaintiff sought consultation with Dr. J. Frazer Garr, an orthopaedic surgeon of Opelousas, who saw plaintiff only for his left knee. It is interesting that plaintiff complained to Dr. Garr of periodic locking and giving away in the left knee. Plaintiff had denied his knee locking previously and the lockman's tests conducted by Dr. Leonard were negative. Upon examination, Dr. Garr found no problems with the knee cap, no swelling or fluid in the knee, no really tender area anywhere, no ligamentous instability of the knee, full knee motion, and thigh measurements were within the normal limits. Dr. Garr did find X-ray evidence of a lesion in the lateral tibual plateau area. Dr. Garr (Dr. Garr's deposition, page 17, lines 17 et seq) stated that it was his opinion that what he saw was a tumor, a cystic or even a tumorous process of cells growing. He further stated that he had not seen trauma or fractures act like this and that is why he was concerned about it. He also stated that his findings were not consistent with the history given by plaintiff (Dr. Garr's deposition, page 21, lines 5 et seq) and he was also of the opinion that trauma, if any, at the time of the accident did not cause nor aggravate the tumor. (Dr. Garr's deposition, page 23, lines 3 et seq.
"The Court finds that the alleged injury to the knee is not in anywise connected with the trauma sustained by plaintiff on February 22, 1980 while in the course and scope of his employment with Montgomery Ward & Co., Inc.
*314 "The Court renders judgment in favor of defendant, Montgomery Ward & Co., Inc. and against plaintiff, Wilton Carter, dismissing his demands with full prejudice at his costs. The Court also renders judgment in favor of defendant Montgomery Ward & Co., Inc., and against plaintiff, Wilton Carter, for all medical expenses paid by Montgomery Ward & Co., Inc. after July 2, 1980 and for all workmen's compensation benefits paid to plaintiff after July 2, 1980. See CCP 862. All costs to be paid by plaintiff.
"The Court fixes the expert fees of the physicians as follows: Dr. J. Frazer Garr, $100.00; Dr. Fred C. Webre, $150.00; Dr. J. Lee Leonard, $200.00; and Dr. Ray C. Boyer, $100.00. The Court also assesses as costs the statement of court reporters' fee in the taking of some of the depositions, that is, those statements introduced in evidence."

APPELLANT'S ARGUMENT ON APPEAL
On behalf of appellant, his counsel stresses in brief and oral argument that in workmen's compensation matters proof of disability following an accident may be sufficient to establish causal relationship to the accident where there was no disability before. Three points are made on appellant's behalf:
1. By his own and lay testimony Carter contends he showed he had no knee problems prior to his accident but did have knee pain afterward.
2. Carter excuses or explains his failure to initially mention pain in his left knee in his first two examinations by Dr. Boyer by contending that, because he was on crutches, there was no weight bearing on the knee. As we understand the argument, Carter contends he felt that the knee was affected but did not mention it because he did not appreciate its seriousness until later when he got off the crutches.
3. Finally, Carter urges that the expert medical witnesses admit that he had a medical problem with his knee.
We are not impressed with appellant's arguments. His arguments are largely disposed of because the medical experts appellant relies on are of the opinion the knee problem arises from a tumor not caused by trauma. Moreover, the trial court had before it evidence affecting the credibility of appellant and one of the lay witnesses which the trial court was justified in taking into account. We also find persuasive the fact that plaintiff-appellant's petition filed on December 29, 1980, makes no mention whatsoever of an injury to the knee but only injury to his leg and ankle. In any event the trial court's findings are entitled to be given much weight under our law, and since the findings and judgment of the trial court are not clearly wrong, the judgment must be affirmed. Arceneaux v. Domingue, 365 So.2d 1330, (La.1979).
For the foregoing reasons we affirm the trial court's rejection of plaintiff-appellant's claim for further compensation.
In our opinion the trial court erred in granting judgment to Montgomery Ward for medical expenses and workmen's compensation paid after July 2, 1980. Carter's condition was at all times well known to Montgomery Ward. It knew of Dr. Boyer's finding on June 4, 1980, that Carter was able to return to work. All medical opinion rendered after that time confirmed the fact that Carter was not disabled from working insofar as his ankle was concerned. It was the finding of the trial court that any knee injury sustained by Carter was not work-connected, and we agree with that finding.
Payments made to Carter after July 2, 1980, were made voluntarily and with full knowledge of the facts. Recovery of payments not due are governed by the Louisiana Civil Code, articles 2301 et seq. However, rather than the specific articles of the code, we believe a jurisprudential rule to be more applicable. The rule was stated in a dissenting opinion in Whitehall Oil Company v. Boagni, 217 So.2d 707 (La.App. 3rd Cir. 1968) in which Judge Tate, then a member of the Court of Appeal, referred to "the general legal principle that, for the stability of society and of transactions, voluntary payments made with full knowledge of all the facts and not under duress may not subsequently be recovered, even though the amount so paid is not actually owed." (Citations omitted)
*315 The Supreme Court granted writs in Whitehall Oil Company v. Boagni, supra, but affirmed the majority holding. 229 So.2d 702 (La.1969). Nevertheless, the Supreme Court opinion contains a reference to the general principle stated by Judge Tate which appears to approve the enunciation. The Supreme Court held, however, that under the facts and circumstances of the Whitehall Oil Company case, the general principle was simply not applicable.
We deem this general rule to be applicable here and for that reason Montgomery Ward is not entitled to recover any amounts paid to plaintiff-appellant as medical benefits or workmen's compensation. For the foregoing reasons the judgment of the trial court is reversed insofar as it renders judgment in favor of Montgomery Ward & Co., Inc. and against plaintiff, Wilton Carter, for all medical expenses and workmen's compensation paid to Wilton Carter after July 2, 1980. The judgment of the trial court is affirmed insofar as it rejects plaintiff-appellant's claim for further benefits under the workmen's compensation law. The costs of the proceedings in the trial court are assessed equally between the parties. Costs of this appeal are assessed equally between appellant and appellee.
REVERSED IN PART AND AFFIRMED IN PART.