517 So.2d 946 (1987)
Scott A. DUHON, Plaintiff-Appellant,
v.
ACADIANA TRANSMISSIONS, Defendant-Appellee.
No. 86-949.
Court of Appeal of Louisiana, Third Circuit.
October 7, 1987.
*947 Lorna M. Brasseaux, Baton Rouge, for plaintiff-appellant.
Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Mark L. Riley, Lafayette, for defendant-appellee.
Before STOKER and YELVERTON, JJ., and CULPEPPER, J. Pro Tem.[*]
YELVERTON, Judge.
Plaintiff, Scott Duhon, brought suit against his former employer, Acadiana Transmissions and its alleged insurer, Westmoreland Casualty Company, for workmen's compensation benefits, penalties, and attorney's fees. From a judgment dismissing his claim, the plaintiff appeals. We affirm the trial court's determination that plaintiff was disabled through April 22, 1985, but no longer. We reverse the trial court's denial of medical expenses and award the plaintiff $2,976.45 in unpaid medical expenses. We deny plaintiff's request for penalties and attorney's fees.
FACTS
Scott Duhon was employed by Acadiana Transmissions in late October 1984. On October 29, his second day on the job, he was struck on the left side of his head while pulling a transmission from a car. On October 30, 1984, he saw Dr. Ronald Menard, a family practitioner, who diagnosed a contusion on the left upper forehead. During subsequent visits plaintiff complained of headaches, and blackout episodes. Dr. Menard found no objective explanation for these symptoms. This doctor referred plaintiff to Dr. Thomas Casanova, III, an ophthalmologist, who was also unable to explain the symptoms. After being referred to several other doctors, plaintiff was referred to Dr. Steven Snatic. Dr. Snatic, a neurologist, first examined him on February 8, 1985. He found tenderness of the left coronoid process and in the left temporal muscles. He diagnosed plaintiff as having occipital neuritis and temporomandibular joint problems caused by his injury in October. Plaintiff was admitted to the hospital April 14, 1985, and discharged on April 17, 1985.
On October 2, 1984 Acadiana Transmissions had applied for workmen's compensation insurance with Westmoreland Casualty. On the application the only business location shown for Acadiana was the shop in Lafayette. The accident occurred at the shop in Crowley which had opened in early October. The insurance company *948 was not informed of the new location until November 1, 1984.
Westmoreland paid workmen's compensation benefits to the plaintiff through April 22, 1985 at $100.05 weekly, but failed to pay the medical bills related to the accident. Plaintiff filed suit on July 10, 1985 seeking total permanent disability benefits, payment of medical expenses, penalties and attorney's fees. Westmoreland Casualty Company answered the suit alleging that the insurance policy with Acadiana was void and without effect due to material misrepresentations made in the policy application. Acadiana Transmissions filed for bankruptcy and all further proceedings against it, as the employer, were stayed. Trial on the merits between plaintiff and the insurer, Westmoreland, took place on January 21, 1986. The trial court found that although Plaintiff had sustained a work-related injury, plaintiff failed to prove that he was disabled beyond April 22, 1985, the date Westmoreland terminated benefits. The court rendered judgment dismissing plaintiff's suit.
ISSUES
The issues raised by this appeal are: 1) Whether the trial court erred in finding defendant properly terminated compensation benefits on April 22, 1985; 2) Whether the trial court erred in failing to award medical benefits; 3) Whether there was insurance coverage in effect at the time of plaintiff's injury; and 4) Whether the trial court erred in failing to award penalties and attorney's fees.
DISABILITY
On appellate review the trial court's factual finding concerning work-related disability should be given great weight and should not be disturbed, where the evidence supports a reasonable factual basis for the trial court's finding, unless clearly wrong. Culp v. Belden Corp., 432 So.2d 847 (La.1983).
In the present case plaintiff argues that the disability lasted until at least July 1, 1985. As stated above, Duhon was referred to Dr. Steven Snatic who finally diagnosed his condition as occipital neuritis and temporomandibular joint problems. On April 14, 1985 plaintiff was admitted to the hospital, treated with injections, and released on April 17. Before plaintiff's hospitalization the evidence shows he was in fairly constant pain. However, Dr. Snatic stated in his deposition that plaintiff was much improved after his hospitalization although there was still some soreness in his jaw and back of his head. On May 2, 1985 Dr. Snatic noted that plaintiff was doing well and that his headaches were few and mild. Dr. George Dugal, a dentist, at Dr. Snatic's request examined the plaintiff in the hospital on April 16, 1985 and found that mandibular motion, which had earlier been restricted, had increased to a point within normal limits. His pain had decreased and the craniomandibular areas were less sensitive to palpation. He examined plaintiff again on April 24, 1985. Plaintiff's range of motion was still normal, but the left coronoid was sore again. On the May 9, 1985 examination plaintiff was totally asymtomatic.
In the opinion of Drs. Snatic and Dugal, plaintiff's pain was such that he suffered a temporary total disability.
Although another court may have found plaintiff to be disabled until the May 2, 1985 visit to Dr. Snatic, we cannot say that the trial court was clearly wrong in determining that plaintiff was no longer disabled past April 22, 1985. It is clear from the record that his condition responded favorably to the treatment received by the April 1985 hospitalization and that he improved dramatically afterwards.
MEDICAL PAYMENTS
Plaintiff argues that the trial court erred in refusing to award him medical benefits. We agree.
Plaintiff contends that medical bills in the amount of $3,116.45 have not been paid.
Defendant denies, for various reasons, any obligation for medical benefits. Primarily, it denies any disability. We have already dealt with that issue. Next, it contends that very little of the medical treatment was necessary, that plaintiff was trying to get a doctor to find something *949 wrong with him. We have examined the record carefully, and there is no support for the argument that plaintiff was shopping for a friendly doctor. We find the evidence is clear that he suffered an injury to his head on October 29, 1984. He was thereafter for a few months referred from one doctor to the next, seeing several, for symptoms no doctor could explain. When in February 1985 he was referred to the neurologist Snatic and the dentist Dugal, his problem was discovered. The depositions of Dr. Snatic and Dr. Dugal explain that the disabling symptoms of headaches and a constant pain were caused by an occipital neuritis and temporomandibular joint problems, conditions which they believed were caused by the injury at work. Their treatment resulted in his full recovery a few weeks later, a good indication of the accuracy of their diagnosis. We find that all of the medical expenses were necessary and related to the accident at work.
Defendant also argues that there are duplications in Dr. Snatic's bills of $530 and $250, the larger figure being a balance that included the smaller. This is not so. These were separate bills. However, defendant was right to deny liability for $140 of Dr. Snatic's bill, because that was for a July 1, 1985 visit for complaints of neck pain that the doctor said was not related to the work-accident. Defendant owes medical benefits of $2,976.45.
INSURANCE COVERAGE
The defendant also argues that it is not responsible for the medical bills because there was no coverage under its policy. The argument is that Mr. Vincent, the general manager of Acadiana Transmissions, made material misrepresentations in the application for insurance with the intent to deceive, nullifying the policy of insurance. We disagree.
La.R.S. 22:619(A) states as follows:
§ 619. Warranties and misrepresentations in negotiation; applications
A. Except as provided in Subsection B of this Section and R.S. 22:692, and R.S. 22:692.1, no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or void the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive.
Under this statute only a finding of intent to deceive will defeat coverage. In the present case we find the defendant failed to prove by a preponderance of the evidence that Vincent intended to deceive the defendant.
At the time the application was signed, October 2, 1984, Vincent represented that Acadiana Transmissions only had a place of business in Lafayette. Defendant argues that Vincent's representation was false because the evidence showed that Acadiana Transmissions opened a Crowley business location in October, 1984. Vincent's testimony, however, points out that at the time the application was signed the Crowley location was not open for business, and that the insurance company was notified of the new location on November 1, 1984. These facts in our opinion do not amount to sufficient evidence to prove that the representation in the application was made with the intent to deceive. There was coverage.
PENALTIES
Plaintiff is seeking penalties for the denial of medical benefits.
Under the 1983 revisions of the Worker's Compensation Law, the arbitrary and capricious standard is no longer applicable to assessment of penalties. Theriot v. American Employees Insurance Company, 482 So.2d 648 (La.App. 3rd Cir.1986). The assessment of penalties is governed by R.S. 23:1201, which at the time of this accident read in pertinent part:
§ 1201. Time and place of payment; penalties
A. Payments of compensation under this Chapter shall be paid as near as may be possible, at the same time and place as wages were payable to the employee before the accident; however, when the employee is not living at the place where the wages were paid, or is absent therefrom, such payments shall be made by mail, upon the employee giving to the *950 employer a sufficient mailing address. However, a longer interval, not to exceed one month, may be substituted by agreement without approval of the director. An interval of more than one month must be approved by the director.
B. The first installment of compensation payable for temporary total disability, permanent total disability, or death shall become due on the fourteenth day after the employer has knowledge of the injury or death and resulting loss of income, on which date all such compensation then due shall be paid.
C. Installment benefits payable pursuant to R.S. 23:1221(3) shall become due on the fourteenth day after the employer or insurer has knowledge of the compensable supplemental earnings benefits on which date all such compensation then due shall be paid.
D. Installment benefits payable pursuant to R.S. 23:1221(4) shall become due on the thirtieth day after the employer or insurer receives a medical report giving notice of the permanent partial disability on which date all such compensation then due shall be paid.
E. If any installment of compensation payable without an order is not paid within the time period provided in Subsections (B), (C), or (D) of this Section, there shall be added to such unpaid installment a penalty of an amount equal to twelve percent thereof, which shall be paid at the same time as, and in addition to, such installment of compensation, unless such nonpayment results from conditions over which the employer or insurer had no control. Whenever the employee's right to such benefits has been reasonably controverted by the employer or his insurer, the penalties set forth in this Subsection shall not apply. The twelve percent additional payment shall be assessed against either the employer or the insurer, depending upon who was at fault in causing the delay. No worker's compensation insurance policy shall provide that this sum shall be paid by the insurer if the director or the court determines that the twelve percent additional payment is to be made by the employer rather than the insurer. Any additional installment of compensation paid by the employer or insurer pursuant to this Section shall be paid directly to the employee.
F. If any compensation payable under the terms of a final, nonappealable judgment is not paid within thirty days after it becomes due, there shall be added to such unpaid compensation an amount equal to twenty-four percent thereof, which shall be paid at the same time as, and in addition to, such compensation, unless the order is appealed as provided in R.S. 23:1351 or unless such nonpayment results from conditions over which the employer had no control.
Under the new worker's compensation provisions, the insurer escapes the payment of statutory penalties if nonpayment results from conditions over which the employer or insurer had no control, or if the latter can "reasonably controvert" the employee's right to medical and compensation benefits. Chelette v. American Guaranty and Liability Insurance, 480 So.2d 363 (La.App. 3rd Cir.1985). The penalty under R.S. 23:1201 may be assessed on the amount the employer or insurer owes the employee for unpaid medical expenses. See Chelette, supra.
Westmoreland does not contend that non-payment of the medical benefits to plaintiff resulted from conditions over which it had no control. The only issue here is whether the defendant "reasonably controverted" plaintiff's entitlement to medical benefits under the Worker's Compensation Law.
The following test as stated in Chelette, supra is applicable:
"... given the facts, medical or otherwise, known to the employer or his insurer, did the employer or insurer have a reasonable basis to believe that medical expenses and compensation benefits were not due the employee. Stated another way, did the employer or his insurer have sufficient factual and medical information to reasonably counter the factual and medical information presented by claimant."
*951 Here the insurer paid the monthly compensation payments through April 22, 1985. But it failed to pay most of the medical expenses. Fred Woodruff, a claims supervisor handling plaintiff's claims for Westmoreland, testified that the insurer terminated plaintiff's weekly benefits because it thought his jaw disorder was the result of a motorcycle accident in March 1985. Westmoreland was aware plaintiff was seeing Dr. Dugal. Woodruff said he did not believe the treatment rendered by Dr. Dugal was related to the accident because the prior doctors who examined plaintiff failed to diagnose the condition. We do not think this explanation is a reasonable one.
The record shows that many of the bills incurred by plaintiff that were not paid by Westmoreland were incurred before the March motorcycle incident. The defendant failed to pay bills incurred between December 1984 and February 1985. Also, plaintiff saw Dr. Dugal for the same symptoms which he had complained about before the motorcycle incident. Plaintiff related to Dr. Dugal that his injuries had been the result of an on the job accident. Westmoreland was aware that plaintiff was seeing Dr. Dugal, had copies of his bills and evidently was continuing to pay plaintiff compensation payments based on his continued disability. These facts are not consistent with Westmoreland's present explanation that their failure to pay medical benefits was because these expenses were believed associated with another accident.
Nevertheless, we find that Westmoreland reasonably controverted plaintiff's entitlement to medical benefits when it raised the insurance coverage question. When Acadiana Transmission applied for insurance, only the Lafayette business location was open. However, Acadiana Transmission had already leased the Crowley location and was evidently in the initial stages of trying to open it. When it was opened for business, Westmoreland was not immediately informed. Although we found that Westmoreland failed to prove by a preponderance of the evidence that Vincent intended to deceive Westmoreland at the time the application was signed, the facts do reveal that Westmoreland was reasonable to believe that a valid issue of coverage existed and therefore had sufficient factual information to reasonably counter plaintiff's claim. For this reason plaintiff's claim for penalties is denied.
ATTORNEY'S FEES
For the reasons given by the court in denying penalties, we also deny plaintiff's claim for attorney's fees. We do not find the defendant arbitrary, capricious or without probable cause in failing to pay plaintiff's unpaid medical bills.
For these reasons, the judgment of the trial court is reversed as to the denial of unpaid medical bills, and reversed likewise in the assessment of court costs against the plaintiff in the court below. Judgment is rendered in favor of the plaintiff for $2,976.45 in medical expenses, with legal interest, and for costs in the trial court and on this appeal. In all other respects the judgment is affirmed.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
NOTES
[*] Judge William A. Culpepper, Retired, Judge Pro Tempore.