559 So.2d 777 (1990)
Mathew DUBOIS, Plaintiff-Appellee,
v.
DIAMOND M COMPANY and Insurance Company of North America, Defendants-Appellants.
No. 88-729.
Court of Appeal of Louisiana, Third Circuit.
February 12, 1990.
Writ Denied May 11, 1990.
*778 Hailey, McNamara, Hall, Larmann & Papale, Brian L. Reboul, Lawrence Larmann, Metairie, for defendants-appellants.
Broussard, Bolton, Halcomb & Vizzier, Roy S. Halcomb, Jr., Alexandria, for plaintiff-appellee.
Douglas M. Moragas, Gerald R. Alonzo, Metairie, for defendant.
*779 Before DOMENGEAUX, C.J., and GUIDRY, FORET, STOKER and LABORDE, JJ.
FORET, Judge.
This is a worker's compensation action filed by plaintiff, Mathew Dubois, against Diamond M Company (Diamond M) and Insurance Company of North America. The trial court rendered judgment in favor of plaintiff, awarding medical expenses, penalties, and attorney's fees. Defendants have appealed.[1]

FACTS
The pertinent facts of this case are as follows:
On October 4, 1980, plaintiff was working for Diamond M as a derrickhand on a platform rig located in the Gulf of Mexico. Plaintiff was pulling on a drill pipe when he suddenly developed chest pain, as well as pain and numbness in his left arm. Plaintiff was taken to the emergency room of West Jefferson Hospital, where he remained hospitalized until October 7, 1980, at which time plaintiff signed himself out against the strict advice of his treating physician, Dr. Fridge Cameron. Dr. Cameron states that it was his intention to have plaintiff undergo additional tests, but that plaintiff checked out of the hospital before he could do so. Consequently, Dr. Cameron was not able to make a definitive diagnosis as to the cause of plaintiff's problems, although he ruled out the possibility of a heart attack.
Subsequent to his release from West Jefferson Hospital, plaintiff underwent a cardiac cath study which revealed 60% blockage in the right coronary artery and 95% blockage in the left anterior descending coronary artery. Surgery was recommended but plaintiff decided to return to work and see if he could continue working without the surgery. He remained at work for four days but was unable to perform his duties, complaining of chest pain, weakness and sweating. Upon his return to Alexandria, Dr. Curt Smith, a cardiovascular surgeon, examined plaintiff. Dr. Smith first saw plaintiff on November 20, 1980, at which time he states that plaintiff complained of the onset of chest pain as well as pain radiating into his left arm while working on a platform rig for Diamond M approximately six weeks prior thereto. In view of the findings from the cardiac cath study, Dr. Smith recommended double bypass surgery, and this operation was performed on November 25, 1980. Plaintiff states that prior to October 4, 1980, he never had any heart problems.
Following plaintiff's surgery, he returned to work for Diamond M. However, in May of 1981, plaintiff was again injured at work while handling a large water hose. He returned to see Dr. Smith on May 27, 1981, and Dr. Smith determined that he had suffered an incisional hernia. Specifically, the sutures made during the previous heart surgery had pulled loose in plaintiff's abdominal area. Dr. Smith repaired the hernia on June 2, 1981, and plaintiff worked without incident until September 24, 1981, at which time he suffered a second incisional hernia while at work for Diamond M which was again repaired by Dr. Smith. Thereafter, the incisional hernia recurred on at least two occasions. Dr. Smith noted the last such occurrence on plaintiff's April 27, 1982 office visit, but advised plaintiff to forego any further attempts to repair the problem.
On December 7, 1985, plaintiff was seen at the emergency room of St. Francis Cabrini Hospital complaining of severe abdominal pains. Plaintiff's treating physician, Dr. Gaddum Reddy, noted that plaintiff had once again sustained a hernia, which was prominent and bulging. At first, Dr. Reddy felt that plaintiff's complaints were attributable to an incarcerated stomach caused by the recurrence of his hernia. However, further testing indicated that plaintiff's problems were attributable to pancreatitis, as well as gallstones. Accordingly, plaintiff underwent surgery, at which time the adhesions associated with plaintiff's hernia were released and the *780 hernia was repaired. It was also noted, during the course of the surgery, that plaintiff had an acute hard gallbladder, swollen pancreas, and a colonic mass in the left lower quadrant. The gallbladder was removed and surgical procedures in reference to the colonic mass and infected pancreas were also performed. Following the surgery, Dr. Reddy noted that plaintiff continued to have sinus tachycardia (increased heart rate) and fever. Considering plaintiff's preexisting heart problems, Dr. Reddy called in a cardiologist, Dr. Ilyas Chaudry, to review plaintiff's medical picture in order to determine whether the sinus tachycardia was heart related. Apparently Dr. Chaudry did not think so and Dr. Reddy eventually determined that the sinus tachycardia and fever were caused by infections associated with plaintiff's gallbladder and pancreas. Thereafter, when his condition had stabilized, plaintiff was released from the hospital and has not since been seen by Dr. Reddy.
Pursuant to R.S. 23:1316, plaintiff obtained a preliminary judgment against defendants herein on June 11, 1986, for medical expenses totaling $11,840.79, together with legal interest thereon. After trial on the merits, the trial court reaffirmed the award of medical expenses under the preliminary judgment and awarded plaintiff additional medical expenses totaling $1,187.05. In addition, the trial court awarded plaintiff penalties provided by R.S. 23:1201, as well as attorney's fees in the amount of $10,000.
Defendants assign the following errors on appeal:
(1) The trial court lacked subject matter jurisdiction to award penalties and attorney's fees for non-payment or late payment of a compensation award made pursuant to the Longshoremen and Harbor Workers Compensation Act.
(2) Plaintiff has failed to show a causal relation between his pancreatitis, sinus tachycardia, and removal of his gallbladder with his on-the-job work injury of October 4, 1980.
(3) Plaintiff has failed to show a causal relation between his cardiovascular disease and his on-the-job work injury of October 4, 1980.
(4) Defendants were not arbitrary and capricious in denying that certain medical charges were not related to plaintiff's employment or on-the-job injury.
(5) The $10,000 award of attorney's fees is excessive.

ASSIGNMENT OF ERROR NO. 1
On March 18, 1985, plaintiff was awarded compensation benefits under the Longshoremen and Harbor Workers Compensation Act pursuant to a ruling of a federal administrative law judge. The award is based on the plaintiff's work-related injury of September 24, 1981, at which time plaintiff suffered a second incisional hernia while working for Diamond M. In view of this, defendants maintain that the trial court did not have subject matter jurisdiction to award penalties and attorney's fees for defendants' failure to make timely payment of medical bills associated with the treatment of plaintiff's incisional hernias. This issue is rendered moot in light of our decision to reverse the trial court's award of penalties and attorney's fees for defendants' failure to timely pay medical expenses associated with the treatment of the incisional hernias. A discussion of the reasons supporting our decision to reverse the trial court with regard to this issue is hereinafter set forth in our discussion of defendants' fourth and fifth assignments of error.

ASSIGNMENT OF ERROR NO. 2
In their second assignment of error, defendants argue that plaintiff has failed to demonstrate a causal connection between his pancreatitis, sinus tachycardia, removal of his gallbladder, and his work-related injury of October 4, 1980. We agree with defendants' argument in this regard. As noted earlier, on December 7, 1985, plaintiff was admitted to the emergency room at St. Francis Cabrini Hospital complaining of severe abdominal pains and he thereafter underwent surgery. Plaintiff's treating physician, Dr. Reddy, testified that during the course of the surgery, a number *781 of medical problems were noted and surgically corrected, including: (a) recurrence of incisional hernia, (b) acute hard gallbladder, (c) swollen pancreas, and (d) colonic mass in the left lower quadrant. According to Dr. Reddy, the pain plaintiff was experiencing upon his admittance to the hospital was attributable to his gallbladder and pancreas and therefore did not relate, in any way, to his incisional hernia. He further stated that plaintiff's acute hard gallbladder and swollen pancreas were not work-related. Additionally, he stated that the colonic mass was not related to any work-related accident. As for the plaintiff's sinus tachycardia and fever, we noted earlier that Dr. Reddy attributes these symptoms to plaintiff's ongoing infections, none of which were attributable to plaintiff's incisional hernia or other work-related injury.
The burden of proving the causation and relationship of medical expenses in a worker's compensation case is on the plaintiff. Gremillion v. Babst Services, Inc., 418 So.2d 637 (La.1982). It is clear to us that the only medical expenses arising out of plaintiff's surgery in December of 1985, which are recoverable, are those associated with the treatment of plaintiff's incisional hernia as well as any expenses relating to the evaluation and/or treatment of plaintiff's heart condition.[2]
All of plaintiff's other medical problems treated during his hospital confinement were not, in any way, related to any work-related activity. We therefore find that the trial court erred in awarding to plaintiff medical expense relating to the treatment of plaintiff's acute gallbladder, pancreatic, and colonic problems.
The trial court also awarded to plaintiff pharmaceutical bills totaling $1,439.55. These expenses pertain to the treatment of many different medical problems (some of which are not work related) and were incurred both before and after plaintiff's surgery of December, 1985. Again, we find that plaintiff is entitled to recover only those pharmaceutical expenses associated with the treatment of his heart condition or incisional hernia.
We are unable to determine from the record which of the expenses awarded by the trial court are attributable to plaintiff's heart condition and/or incisional hernia and therefore recoverable. In view of this, we reverse the judgment of the trial court and remand this case to the trial court for a determination of those expenses, it being understood that these are the only expenses recoverable by plaintiff herein.

ASSIGNMENT OF ERROR NO. 3
Defendants also argue that plaintiff failed to show a causal relation between his cardiovascular disease and his on-the-job work injury of October 4, 1980. As noted in our recitation of the pertinent facts of this case, plaintiff testified as to the onset of left arm pain and chest pain while performing manual labor for Diamond M on October 4, 1980. Thereafter, plaintiff was unable to continue working and was taken to West Jefferson Hospital where he was treated by Dr. Fridge Cameron. While Dr. Cameron stated that he ruled out the possibility that plaintiff had suffered a heart attack, he also noted that the vectorcardiogram and echocardiogram studies were both abnormal which, in his opinion, is consistent with a diagnosis of symptomatic coronary artery disease. He also stated that the left arm pain plaintiff complained of could have been associated with an attack of angina. Dr. Curt Smith, who performed double coronary bypass surgery on plaintiff, testified that it was his opinion that the physical labor associated with plaintiff's employment on October 4, 1980, made his underlying coronary artery disease symptomatic, resulting in left arm pain and chest pain. Accordingly, it was necessary for plaintiff to undergo double coronary bypass surgery in order to remove the blockage in plaintiff's arteries. Under such circumstances, it is our opinion that plaintiff is entitled to reimbursement for medical expenses associated with the *782 treatment of his heart condition. In Adams v. New Orleans Public Service, Inc., 418 So.2d 485 (La.1982), plaintiff suffered an angina attack while engaged in physical labor for his employer, rendering him unable to return to his work activity. The court specifically held that plaintiff's condition was compensable and, in so doing, stated the following:
"Both heart attacks and episodes of angina pectoris may be caused by an inadequate oxygen supply to the heart muscle. Both are recognized by the same symptoms, the main difference being that the pain experienced during an infarction is generally more severe and of a longer duration.7 Given these similarities, there is no justification for granting compensation in the first situation while denying plaintiff recovery."
[Footnotes omitted, emphasis added.]
Similarly, in Allison v. State Farm Fire & Cas., 520 So.2d 1063 (La.App. 3 Cir. 1987), plaintiff suffered an angina attack while at work and eventually underwent triple bypass surgery. We held that, under such circumstances, plaintiff's injuries were compensable under the provisions of our Worker's Compensation Act. Defendants' third assignment of error is without merit.

ASSIGNMENTS OF ERROR NOS. 4 & 5
In their final two assignments of error, defendants argue that the trial court erred in awarding penalties and attorney's fees and, in the alternative, defendants argue that the amount of attorney's fees awarded by the trial court is excessive. The trial court clearly erred in awarding penalties provided by R.S. 23:1201[3]. This statute provides only for the recovery of penalties for non-payment of the weekly compensation benefits described therein and does not allow for the imposition of penalties for failure to pay medical expenses. We therefore reverse the trial court's award of penalties. The trial court's award of attorney's fees was apparently based on defendants' failure to pay medical expenses associated with the plaintiff's surgery in December of 1985, as well as pharmaceutical bills associated with plaintiff's heart condition and other ailments.
R.S. 23:1201.2[4] provides as follows:
"Any insurer liable for claims arising under this Chapter, and any employer whose liability for claims arising under this Chapter is not covered by insurance, shall pay the amount of any claim due under this Chapter within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject employer or insurer, in addition to the amount of the claim due, to payment of all reasonable attorney's fees for the prosecution and collection of such claim, or in the event a partial payment or tender has been made, to payment of all reasonable attorney's fees for the prosecution and collection of the difference between the amount paid or tendered and the amount due. Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney's fees for the prosecution and collection of such claims. The provisions of R.S. 23:1141 limiting the amount of attorney's fees shall not apply to cases where the employer or insurer is found liable for *783 attorney's fees under this Section. The provisions of R.S. 22:658 shall not be applicable to claims arising under this Chapter."
With regard to the expenses relating to plaintiff's surgery in December of 1985, the pertinent facts are as follows: In January of 1986, Ken Domilise of Diamond M, received a copy of the bill from St. Francis Cabrini Hospital. Upon receiving the bill, Domilise noted that it indicated that other medical problems were treated in addition to plaintiff's incisional hernia. Accordingly, he decided to investigate further. Domilise called the hospital in February and was advised that plaintiff had, in fact, been treated for medical problems unrelated to the incisional hernia. Domilise requested that the bill be separated, advising that Diamond M would only pay those bills associated with the treatment of plaintiff's incisional hernia. As of May of 1986, Domilise still had not received a response from the hospital so he once again called and was advised, at that time, that it would be necessary for him to send an auditor to the hospital to break down the charges. Accordingly, Domilise made arrangements to send an auditor to the hospital. However, when he phoned the hospital to make arrangements for the auditor to review the records, he was advised that it would be necessary for him to obtain a medical authorization from the plaintiff before the auditor would be allowed to review the records. At this point, plaintiff sent a letter to St. Francis Cabrini Hospital, dated May 27, 1986, explaining the problems he was experiencing in obtaining a breakdown of the medical charges. Finally, on July 16, 1986, the hospital forwarded to Domilise a breakdown of the charges, separating those associated with the treatment of plaintiff's hernia. Upon receiving this bill, Domilise forwarded to St. Francis Cabrini Hospital the amount stated to be associated with the treatment of the hernia, i.e., the sum of $3,116.10.
The scenario in reference to Dr. Reddy's bill, as well as the other medical charges associated with plaintiff's surgery in December of 1985, is much the same. Domilise received Dr. Reddy's bill in December of 1985, and attempted to phone Dr. Reddy to discuss this matter with him. Dr. Reddy's office would not allow Domilise to speak to the doctor. Finally, by letter to Dr. Reddy's office dated May 5, 1986, Domilise explained his dilemma and requested a breakdown of Dr. Reddy's charges. Dr. Reddy then called Domilise and thereafter a breakdown of Dr. Reddy's charges were sent to Diamond M on May 13, 1986. On May 27, 1986, Domilise forwarded to Dr. Reddy the amount stated to be attributable to the treatment of plaintiff's hernia condition, i.e., the sum of $850. As for the other medical bills pertaining to the plaintiff's surgery in December of 1985, Domilise incurred similar difficulties, stating that he attempted, without success, to obtain a breakdown of these charges. We should also note that plaintiff's attorney forwarded a letter to Diamond M dated May 19, 1986, at which time plaintiff's attorney only demanded that Diamond M pay those expenses associated with the treatment of plaintiff's incisional hernia.
In view of the above and foregoing, we feel that the trial court committed manifest error in finding that defendants herein were arbitrary and capricious in failing to pay the medical bills associated with plaintiff's surgery within sixty days after receipt thereof. We find that the defendants were justified in withholding payment of the medical bills until such time as a proper breakdown of the charges was received.
As for the pharmaceutical bills associated with plaintiff's heart condition, we find that the evidence supports the trial court's finding that the defendants acted without probable cause in refusing to pay such expenses. Domilise stated that he relied on medical information supplied to him back in 1980 by Dr. Jose Garcia-Ramirez and Dr. Fridge Cameron in reaching his decision to deny payment of these expenses. The medical information supplied by these physicians is inconclusive while, on the other hand, plaintiff's treating physician, Dr. Curt Smith, unequivocably stated that there was a causal relationship between plaintiff's heart condition and his *784 work activity. Considering this, we find that the trial court did not commit manifest error in finding that the defendants were arbitrary and capricious in refusing to pay pharmaceutical bills associated with the treatment of plaintiff's heart condition. We find that the $10,000 award of attorney's fees made by the trial court is clearly excessive, and we reduce that award to $3,000. This award shall be made against both the insurer, Insurance Company of North America, and the employer, Diamond M, as the record reflects that Diamond M was directly involved in the handling of this claim.
We should also note that other pharmaceutical bills were sent to defendants for payment which did not relate to plaintiff's heart condition. As to these bills, defendants encountered the same problem discussed above in attempting to break down these charges in order to determine which of these bills defendants should pay. Considering this, we find that the trial court committed manifest error in holding that the defendants' failure to pay such expenses was arbitrary and capricious.

RECOVERY OF AMOUNT PAID PURSUANT TO PRELIMINARY JUDGMENT
The record reflects that defendants have paid the full amount of the preliminary judgment rendered in these proceedings. It is now well settled that a preliminary judgment rendered pursuant to R.S. 23:1316[5] is interlocutory in nature and is therefore unappealable. Flot v. Transportation Ins. Co., 533 So.2d 1221 (La. 1988). It has also been held that amounts paid pursuant to a properly rendered preliminary judgment are not recoverable by the employer or the worker's compensation carrier even if it is later determined that such amounts were not legally owed by such parties. Price v. A. Copeland Enterprises, Inc., 550 So.2d 233 (La.App. 4 Cir. 1989).
In the instant case, it is clear to us that the preliminary judgment rendered in these proceedings was improvidently granted by the trial court. R.S. 23:1316, by its express language, only allows a preliminary judgment for "compensation" until such time as a trial on the merits can be held. See Bickford v. Lutz, 339 So.2d 1268 (La.App. 1 Cir.1976); Stapleton v. Travelers Ins. Co., 359 So.2d 1051 (La.App. 3 Cir. 1978), writ denied, 360 So.2d 1176 (La.1978). The right to medical expenses under the Louisiana Worker's Compensation Act is a separate and distinct remedy from the right to compensation. Young v. Hercules, Inc., 451 So.2d 109 (La.App. 3 Cir.1984). The trial court erred in rendering a preliminary judgment against defendants herein for medical expenses as R.S. 23:1316 does not provide for such a remedy. Indeed, it would be somewhat anomalous to allow a claimant to obtain a preliminary judgment against his employer and/or its insurer for untold thousands of dollars of medical expenses while, at the same time, denying any right of appeal of the preliminary judgment and further disallowing all rights of reimbursement in the event it is determined that the amounts paid pursuant to the preliminary judgment were not legally owed. We do not feel that such an interpretation of this statute would be in keeping with the underlying purpose of the statute which, as we understand it, is to provide the claimant with a measure of support, through the payment of weekly compensation benefits, until such time as an adjudication of his rights can be held. Most significantly, however, such an interpretation is contrary to the express language of R.S. 23:1316.
Having found that the trial court erred in rendering a preliminary judgment for medical expenses, we must now determine whether or not defendants herein should be allowed to obtain reimbursement for those medical expenses which do not relate to the treatment of plaintiff's heart condition or incisional hernia. Here, we must draw a distinction between those expenses which were voluntarily paid by defendants and those expenses which were paid as a result of the preliminary judgment. *785 As to those expenses voluntarily paid by defendants (and the $3,116.10 payment to St. Francis Cabrini Hospital and $850 payment to Dr. Reddy are two expenses which fall into this category), defendants have no right of reimbursement. Defendants voluntarily paid these amounts after carefully reviewing the facts and thus, defendants should not be allowed to seek reimbursement at this point.[6] As to the medical expenses paid by defendants in consequence of the preliminary judgment, we find that the defendants should be allowed to recover such items in the event the trial court determines that such expenses do not relate to plaintiff's heart condition or incisional hernia. Civil Code art. 2301 allows for the recovery of the payment of a thing not due. The instant case is analogous to Johnson v. State Through Div. of Admin., 510 So.2d 87 (La.App. 1 Cir.1987), in which case the court held that the State was entitled to recover worker's compensation and medical benefits paid in error and as a result of the employee's misrepresentations.
We also find that the facts of the instant case are clearly distinguishable from Carter v. Montgomery Ward & Co., Inc., 413 So.2d 309 (La.App. 3 Cir.1982). In Carter, a worker's compensation case, the court held that payments made with full knowledge of the facts and not under duress may not be subsequently recovered. In the instant case, the payments made by defendants in consequence of the preliminary judgment were paid under duress as defendants had no alternative but to pay these expenses under such circumstances. Carter can therefore be distinguished on this basis.
In summation, we find that the trial court erred in granting the preliminary judgment. With the exception of those medical expenses voluntarily paid, defendants will be allowed to seek reimbursement for all medical expenses which do not relate to the treatment of plaintiff's incisional hernia or heart condition. These amounts shall be determined by the trial court upon the remand of this case.
In view of the above and foregoing, we reverse the judgment of the trial court and remand this matter to the trial court for a determination of which medical expenses incurred by plaintiff are attributable to the treatment of plaintiff's incisional hernia and/or heart condition, and which are not, it being the holding of this Court that only those mentioned medical expenses are owed by defendants. However, in no case shall the trial court find that defendants are entitled to recover those medical expenses voluntarily paid by defendants.
We also reverse the judgment of the trial court awarding plaintiff penalties in accordance with R.S. 23:1201, and we reduce the trial court's award of attorney's fees from $10,000 to $3,000. Finally, all costs of this appeal are to be paid by defendants, Diamond M Company and Insurance Company of North America. Costs at the trial level shall await final disposition of this matter.
REVERSED AND REMANDED.
GUIDRY, J., concurs and assigns written reasons.
DOMENGEAUX, C.J., dissents and assigns written reasons.
LABORDE, J., dissents for reasons assigned by DOMENGEAUX, C.J.
GUIDRY, Judge, concurring.
I agree with the majority that La.R.S. 23:1201 does not allow for the imposition of penalties for the failure to timely pay medical expenses but only for the untimely payment of worker's compensation benefits. In my view, we erred when we held to the contrary in Chelette v. American Guarantee and Liability Insurance Company, 480 So.2d 363 (La.App. 3rd Cir.1985), and Duhon v. Acadiana Transmissions, 517 So.2d 946 (La.App. 3rd Cir.1987).
*786 Further, in my opinion, we erred in Dupre v. Louisiana Retailers Association Self-Insurers Fund, 509 So.2d 608 (La. App. 3rd Cir.1987), writ denied, 512 So.2d 440 (La.1987), when we agreed that La.R.S. 23:1316 allows for a preliminary judgment for unpaid medical expenses. R.S. 23:1316, by its express language, only allows a preliminary judgment for compensation until such time as a trial on the merits can be held. Although there was a writ denial in Dupre, the defendant did not apply for supervisory relief and therefore, this issue was not considered by our Supreme Court.
In the cited cases, we were not confronted with the precise issues presented in this proceeding. Rather, in Chelette and Duhon, appellants questioned only the trial court's assessment of the evidence and its conclusion that plaintiffs had borne their burden of proof, i.e., did the employer or his insurer reasonably counter the factual and medical information presented by claimant (penalties) and/or did the employer or his insurer act arbitrarily (attorney's fees). Likewise, in Dupre, the appellant did not assert that La.R.S. 23:1216 did not allow a preliminary judgment for unpaid medical expenses but questioned the judgment's efficacy in light of the fact that the preliminary judgment had been amended to include unpaid medical expenses after answer was filed. Irrespective of our reasons for so holding, I now acknowledge the incorrectness of these decisions and believe that they should be corrected as the search for justice is not furthered by the perpetuation of an error.
For these reasons, I respectfully concur.
DOMENGEAUX, Chief Judge, dissenting.
Pursuant to La.R.S. 23:1316, a preliminary judgment was granted in Mathew Dubois' favor, awarding the medical expenses prayed for in his petition. After a trial on the merits, the preliminary judgment was essentially reiterated, and plaintiff was awarded additional medical expenses that were incurred since the granting of the preliminary judgment. Defendants were assessed as 12% penalty under La.R.S. 23:1201, plus attorney's fees under La.R.S. 23:1201.2 in the amount of $10,000.00.
A preliminary judgment is a penalty imposed on an employer or insurer who chooses not to answer a worker's compensation suit timely. It is not an appealable judgment. A preliminary judgment remains in effect until the defendant requests a trial on the merits. Because this type of judgment is actually a penalty, the defendant is responsible for the full amount of the preliminary judgment regardless of the outcome of the trial on the merits. Dupre v. Louisiana Retailers Association Self Insurers, 509 So.2d 608 (La. App. 3rd Cir.1987), writ denied, 512 So.2d 440 (La.1987), and Price v. A. Copeland Enterprises, Inc., 550 So.2d 233 (La.App. 4th Cir.1989).
In the case before us, the plaintiff was awarded medical benefits for a heart condition which the record reveals is in fact work related. But he was also awarded benefits for abdominal surgery which was not necessitated by a work related condition. I am in full agreement with the majority's finding that the gall bladder and pancreas problems, with their associated symptoms, were not work related. That award, however, is not before us as we are not able to overturn a preliminary judgment. Dupre, supra; Flot v. Transportation Ins. Co., 533 So.2d 1221 (La.1988).
On appeal, the defendants have asked for a reimbursement of the expenses paid pursuant to the preliminary judgment in the event we find that the grounds for that judgment are invalid. We cannot allow the defendants' entry through the back door of reimbursement when the law clearly prohibits entry through the front door of appeal. Price, supra.
The majority's reversal of the preliminary judgment is based on a finding that medical expenses may not be awarded under Section 1316. The cases relied upon for this conclusion, however, hold only that attorney's fees may not be imposed in a preliminary judgment because they are not "compensation payments." The precise question of whether medical expenses are recoverable in a preliminary judgment has *787 been addressed previously by this Court, and we concluded that they are. See Dupre, supra; see also Moore v. Employers National Ins. Co., 464 So.2d 29, at 33 (La.App. 3rd Cir.1985), writ denied, 467 So.2d 1136 (La.1985), which states in dicta that the same result would be reached. The jurisprudence of this Circuit requires affirmations of an award for medical expenses as a component of "compensation payments" under Section 1316.
Turning to the question of penalties, the majority quickly disposes of the 12% penalty by noting that Section 1201 does not provide for a penalty for non-payment of medical benefits. This Circuit has previously held otherwise. In Chelette v. American Guaranty and Liability Ins. Co., 480 So.2d 363 (La.App. 3rd Cir.1985), this Court affirmed an award of statutory penalties on both medical expenses and weekly compensation benefits. Chelette was recently cited favorably in Duhon v. Acadiana Transmission, 517 So.2d 946 (La.App. 3rd Cir.1987). Prior to the 1983 amendments of the worker's compensation law, both penalties and attorney's fees were consistently awarded for failure to pay medical expenses. Chelette continued this precedent under the new legislation. See also LaHaye v. Westmoreland Cas. Co., 509 So.2d 748 (La.App. 3rd Cir.1987).
I agree with the majority that this case must be remanded, but for reasons different from those articulated by the majority. The trial court need only determine which pharmacy bills incurred by the plaintiff are attributable to plaintiff's heart condition and which are not. Once that determination is made, the 12% penalty should be assessed on the heart related pharmacy bills. I agree with the majority that because the defendants were not arbitrary and capricious in failing to pay the remaining medical bills, and did reasonably controvert the claim for gall bladder and pancreas related expenses, no penalties or attorney's fees should be assessed on that amount.
Furthermore, I disagree with the majority's holding that the defendants are entitled to reimbursement of the amounts paid pursuant to the preliminary judgment. I further disagree with the reversal of penalties awarded under Section 1201. I must respectfully dissent.
NOTES
[1] Plaintiff's entitlement to weekly worker's compensation benefits is not at issue as plaintiff is being paid benefits under the Longshoremen and Harbor Workers Compensation Act.
[2] As shall hereinafter be noted in our discussion of defendants' third assignment of error, plaintiff's heart condition is clearly work-related.
[3] R.S. 23:1201(E) was amended by Acts 1988, # 938, § 1, effective July 1, 1989. This amendment is not applicable to the facts of this case. However, the 1983 amendment to this statute is applicable as the operative facts of this case arose subsequent thereto. See Blewer v. Continental Assur. Co., 394 So.2d 842 (La.App. 3 Cir. 1981), writ denied, 399 So.2d 602 (La.1981).
[4] R.S. 23:1201.2 was amended by Acts 1988, # 732 § 1. This amendment is not applicable to the facts of this case. However, the 1983 amendment to this statute is applicable as the operative facts of this case arose subsequent thereto. See Blewer v. Continental Assurance Co., supra.
[5] La.R.S. 23:1316 was amended in part by Acts 1988, #938, § 2, effective July 1, 1989. This amendment is not applicable to the facts of the instant case.
[6] Defendants may have voluntarily paid other medical expenses as well. However, the record does not clearly indicate whether or not they did. Upon remand of this case, the trial court should make this determination and deny reimbursement for any and all other payments which were voluntarily made by defendants.